REED SMITH LLP
James C. McCarroll
Jordan W. Siev
Kurt F. Gwynne (*pro hac vice*)
599 Lexington Avenue
New York, NY 10022-7650
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
Email: jmccarroll@reedsmith.com
     jsiev@reedsmith.com
     kgwynne@reedsmith.com

*Counsel for the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| National Bank of Anguilla (Private Banking & Trust) Ltd.,<br><br>            Debtor. | Case No.: 16-11806 (MG) |
| National Bank of Anguilla (Private Banking & Trust) Ltd.,<br>                  Plaintiff,<br>    v.<br><br>National Bank of Anguilla Ltd., National Commercial Bank of Anguilla Ltd., and Eastern Caribbean Central Bank,<br><br>                  Defendants. | Case No.: 16-AP-01279 (MG) |

**NATIONAL BANK OF ANGUILLA (PRIVATE BANKING & TRUST) LTD.'S**
**MEMORANDUM OF LAW IN OPPOSITION TO THE NATIONAL BANK OF**
**ANGUILLA LTD.'S MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

**PAGE**

I.  THE DEBTOR STATES CLAIMS UPON WHICH RELIEF CAN BE GRANTED ........................................................................................ 4

    A.  The Presumption Against Extraterritoriality is Rebutted Because (1) the Transfers Are Domestic or (2) Congress Has Given Clear, Affirmative Indication that the Bankruptcy Code's Avoidance Provisions Apply Extraterritorially .................................................................................. 5

        1.  The Transfers Are Domestic Transfers ...................................... 6

        2.  Congress Has Given a Clear, Affirmative Indication that the Bankruptcy Code's Avoidance Provisions Apply Extraterritorially ......... 8

    B.  New York Debtor and Creditor Law Applies to the Claim at Issue. .................... 14

    C.  If Any Challenged Transfer is a Foreign Transfer, the NY DCL Applies Extraterritorially ................................................................................. 17

    D.  If Anguillan Law Applies, the Debtor Has Pled Claims Thereunder. .................. 18

    E.  The Adversary Proceeding Should Not be Stayed Based on International Comity ................................................................................................. 18

    F.  The Debtor's Section 502(d) Claim Should Not be Dismissed. .......................... 22

II.  THE COMPLAINT SHOULD NOT BE DISMISSED ON *FORUM NON CONVENIENS* GROUNDS. .............................................................................. 22

III.  THE ACT OF STATE DOCTRINE IS INAPPLICABLE. ............................................. 22

CONCLUSION .......................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
 677 F.3d 60 (2d Cir. 2012)...................................................................................6, 7, 8

*Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs. Ltd.*,
 No. 94 CIV. 5620, 1999 WL 64283 (S.D.N.Y. Feb. 8, 1999)................................17

*Alfred Dunhill of London, Inc. v. Republic of Cuba*,
 425 U.S. 682, 96 S. Ct. 1854, 48 L. Ed. 2d 301 (1976)...........................................23

*AngioDynamics, Inc. v. Biolitec AG*,
 711 F.3d 248 (1st Cir. 2013).............................................................................13, 14

*Ashcroft v. Iqbal*,
 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).........................................4

*Barnett v. Jamesway Corp. (In re Jamesway Corp.)*,
 235 B.R. 329 (Bankr. S.D.N.Y. 1999)......................................................................8

*Begier v. IRS*,
 496 U.S. 53, 110 S. Ct. 2258, 110 L. Ed. 2d 46 (1990)....................................11, 13

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).........................................4

*Cargo Partner AG v. Albatrans, Inc.*,
 352 F.3d 41 (2d Cir. 2003).........................................................................................4

*China Trade & Dev. Corp. v. M.V. Choong Yong*,
 837 F.2d 33 (2d Cir. 1987)................................................................................20, 21

*Commerce and Indus. Ins. Co. v. U.S. Bank Nat'l Ass'n*,
 No. 07-cv-5731(JGK), 2008 WL 4178474 (S.D.N.Y. Sept. 3, 2008) ....................18

*Cullen Ctr. Bank & Trust v. Hensley (In re Criswell)*,
 102 F.3d 1411 (5th Cir. 1997) .........................................................................11, 13

*Cumberland Oil Corp. v. Thropp*,
 791 F.2d 1037 (2d Cir. 1986)............................................................................12, 14

*Daventree Ltd. v. Republic of Azerbaijan*,
 34 9 F. Supp. 2d 736 (S.D.N.Y. 2004), *opinion clarified*, No. 02-cv-6356
 (SHS), 2005 WL 2585227 (S.D.N.Y. Oct. 13, 2005)...............................................22

*DeJesus v. Sears, Roebuck & Co.*,
  87 F.3d 65 (2d Cir. 1996) ...................................................................................4

*Deutsche Bank Trust Co. Ams. v. Large Private Beneficial Owners (In re Tribune
  Co. Fraudulent Conveyance Litig.)*,
  818 F.3d 98 (2d Cir. 2016) ...........................................................................12, 14

*Dewsnup v. Tim*,
  502 U.S. 410, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992) ........................................14

*Drenis v. Haligiannis*,
  452 F. Supp. 2d 418 (S.D.N.Y. 2006)..................................................................15

*Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr. Co.*,
  375 F. Supp. 2d 257 (S.D.N.Y. 2005) (Rakoff, J.) ................................................17

*EEOC v. Arabian Am. Oil Co.*,
  499 U.S. 244, 111 S. Ct. 1227, 113 L. Ed. 2d 274 (1991)........................................5

*Elgin Sweeper Co. v. Melson Inc.*,
  884 F. Supp. 641 (N.D.N.Y. 1995)..................................................................15, 17

*Environmental Defense Fund, Inc. v. Massey*,
  986 F.2d 528 (D.C. Cir. 1993) ............................................................................6

*FDIC v. Hirsch (In re Colonial Realty Co.)*,
  980 F.2d 125 (2d Cir. 1992)......................................................................12, 13, 14

*Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*,
  414 F.3d 325 (2d Cir. 2005)..............................................................................14

*Fogerty v. Petroquest Res., Inc. (In re Condor Ins. Ltd.)*,
  601 F.3d 319 (5th Cir. 2010) .............................................................................18

*French v. Liebmann (In re French)*,
  440 F.3d 145 (4th Cir. 2006), *cert. denied*, 549 U.S. 815 (2006)................................. *passim*

*Geron v. Seyfarth Shaw LLP (In re Thelen LLP)*,
  736 F.3d 213 (2d Cir. 2013)..........................................................................14, 16

*Global Reins. Corp. v. Equitas Ltd.*,
  18 N.Y.3d 722, 946 N.Y.S.2d 71, 969 N.E.2d 187 (2012)....................................17

*GlobalNet Financial.com, Inc. v. Frank Crystal & Co.*,
  449 F.3d 377 (2d Cir. 2006)..........................................................................14, 16

*GMAM Inv. Funds Trust I v. Globo Comunicacoes e Participacoes S.A. (In re Globo Comunicacoes e Participacoes S.A.),*
    317 B.R. 235, 250 (S.D.N.Y. 2004)...................................................................10

*Hilton v. Guyot,*
    159 U.S. 113, 16 S. Ct. 139, 40 L. Ed. 95 (1895)........................................18

*Hosking v. TPG Capital Mgmt., LP (In re Hellas Telecomms. (Luxembourg) II SCA),*
    526 B.R. 499 (Bankr. S.D.N.Y. 2015) (Glenn, J.)....................................5, 6

*Hosking v. TPG Capital Mgmt., LP (In re Hellas Telecomms. (Luxembourg) II SCA),*
    555 B.R. 323 (Bankr. S.D.N.Y. 2016) (Glenn, J.).......................................21

*In re Allstate Ins. Co. v. Stolarz,*
    81 N.Y.2d 219, 613 N.E.2d 936, 597 N.Y.S.2d 904 (N.Y. 1993)...............14

*In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Meyerson & Casey,*
    160 B.R. 882 (Bankr. S.D.N.Y. 1993)..........................................................8

*In re Hellas Telecomms.,*
    524 B.R. ................................................................................................14, 15, 16

*In re Hellas Telecomms.,*
    535 B.R. ................................................................................................16, 18, 21

*In re J.P. Jeanneret Assocs., Inc.,*
    769 F. Supp. 2d 340 (S.D.N.Y. 2011)..........................................................4

*In re Madoff,*
    2016 WL 6900689 ............................................................................. *passim*

*In re Vitro S.A.B. de C.V.,*
    701 F.3d 1031 (5th Cir. 2012) ....................................................................22

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.,*
    412 F.3d 418 (2d Cir. 2005).........................................................................21

*Kismet Acquisition LLC v. Icenhower (In re Icenhower),*
    757 F.3d 1044 (9th Cir. 2014) ....................................................................10

*Krys v. Farnum Place, LLC (In Re Fairfield Sentry Ltd.),*
    768 F.3d 239 (2d Cir. 2014).........................................................................22

*Lamonica v. N. of Eng. Protecting and Indem. Assoc. Ltd. (In re Probulk Inc.),*
    407 B.R. 56 (Bankr. S.D.N.Y. 2009) ...........................................................9

*Licci v. Lebanese Canadian Bank, SAL*,
   672 F.3d 155 (2d Cir. 2012)..................................................................................15

*Licci ex rel. Licci v. Lebanese Canadian Bank, S*AL,
   739 F.3d 45 (2d Cir. 2013)....................................................................................17

*Loginovskaya v. Batratchenko*,
   764 F.3d 266 (2d Cir. 2014)...........................................................................6, 7, 8

*Lyman Commerce Solutions, Inc. v. Lung*,
   No. 12-cv-4398 (TPG), 2014 WL 476307 (S.D.N.Y. Feb. 6, 2014) .................15, 16

*Maxwell Commc'n Corp. PLC v. Societe Gen. PLC (In re Maxwell Commc'n
   Corp. PLC)*,
   186 B.R. 807 (S.D.N.Y. 1995), *aff'd*, 93 F.3d 1036 (2d Cir. 1996) ....................7, 13

*Maxwell Commc'n Corp. v. Societe Generale (In re Maxwell Commc'n Corp.)*,
   93 F.3d 1036 (2d Cir. 1996)......................................................................18, 19, 20

*Morrison v. Nat'l Australia Bank Ltd.*,
   561 U.S. 247, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010)...........................5, 6, 7, 9

*Nakash v. Zur (In re Nakash)*,
   190 B.R. 763 (Bankr. S.D.N.Y. 1996) .....................................................................9

*Paradigm BioDevices, Inc. v. Centinel Spine, Inc.*,
   No. 11-cv-3489 (JMF), 2013 WL 1915330 (S.D.N.Y. May 9, 2013) ....................13

*Park Place Entm't Corp. v. Transcon. Ins. Co.*,
   225 F. Supp. 2d 406 (S.D.N.Y. 2002)....................................................................15

*Pennsylvania Dept. of Pub. Welfare v. Davenport*,
   495 U.S. 552, 110 S. Ct. 2126, 109 L. Ed. 2d 588 (1990).......................................14

*Peterson Energia Inversora, S.A.U. v. Argentine Republic*,
   No. 15–cv–2739 (LAP), 2016 WL 4735367 (S.D.N.Y. Sept. 9, 2016)...................23

*Picard v. Bureau of Labor Ins. (In re BLMIS)*,
   480 B.R. 501 (Bankr. S.D.N.Y. 2012) (Lifland, J.)........................................ *passim*

*Picard v. Fairfield Greenwich Ltd.*,
   762 F.3d 199 (2d Cir. 2014)...................................................................................12

*Republic of Austria v. Altmann*,
   541 U.S. 677, 124 S. Ct. 2240, 159 L. Ed. 2d 1 (2004)..........................................22

*RJR Nabisco, Inc. v. European Cmty.*,
   136 S.Ct. 2090 (2016)...................................................................................5, 6, 9

*Schultz v. Boy Scouts of Am., Inc.*,
    65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985)...................................................17

*Seiden Assocs., Inc. v. ANC Holdings, Inc.*,
    754 F.Supp. 37 (S.D.N.Y. 1991).............................................................................................4

*Sinatra v. Gucci (In re Gucci)*,
    309 B.R. 679 (S.D.N.Y. 2004)................................................................................................9

*SIPC. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec.
    LLC)*,
    474 B.R. 76 (S.D.N.Y. 2012)..................................................................................................9

*SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*,
    Adv. P. No. 08-01789 (SMB), Adv. P. No. 11-02760 (SMB), 2017 WL
    1806506 (Bankr. May 4, 2017)............................................................................................20

*SIPC. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Secs.)*,
    513 B.R. 222 (S.D.N.Y. 2014) (Rakoff, J.) ................................................................ *passim*

*Spizz v. Goldfarb Seligman & Co. (In re Ampal-Am. Israel Corp.)*,
    562 B.R. 601 (Bankr. S.D.N.Y. 2017) (Bernstein, J.) .......................................................8, 12

*Trimble v. Woodhead*,
    102 U.S. 647, 26 L. Ed. 290 (1880) ...................................................................................12, 14

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*,
    216 F. Supp. 2d 198 (S.D.N.Y. 2002)....................................................................................16

*Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*,
    543 B.R. 127 (Bankr. S.D.N.Y. 2016)........................................................................11, 12, 13

*Weisfelner v. NAG Investments, LLC (In re Lyondell Chemical Co.)*,
    Order Denying NAG's Motion to Dismiss, Case No. 09-10023 (MG), Adv.
    Pro. No. 11-01844 (MG), at 7 n.3 (Glenn, J.)......................................................................12

**Statutes**

11 U.S.C. § 15..................................................................................................................................19

11 U.S.C. § 362.............................................................................................................................9, 10

11 U.S.C. § 502(d) .......................................................................................................................1, 22

11 U.S.C. § 541...................................................................................................................10, 11, 13

11 U.S.C. § 541(a) .......................................................................................................................9, 10

11 U.S.C. § 541(a)(1).................................................................................................................13, 14

11 U.S.C. § 541(a)(3) ........................................................................................9, 10, 12

11 U.S.C. § 544 ....................................................................................................17, 18

11 U.S.C. § 548 ..........................................................................................6, 10, 11, 12

11 U.S.C. § 550 ......................................................................................1, 9, 10, 12

11 U.S.C. § 550(a)(2) .........................................................................................8

11 U.S.C. § 1521(a)(7) ......................................................................................20

11 U.S.C. § 1523(a) ...........................................................................................20

28 U.S.C. § 1334(c)(1) ......................................................................................21

28 U.S.C. § 1334(e)(1) ......................................................................................9

Anguillan Fraudulent Dispositions Act .............................................................15, 18

Bankruptcy Act § 70(a)(4) .................................................................................14

Bankruptcy Act § 70a ........................................................................................14

Commodities Exchange Act ...............................................................................6

NY DCL § 273 ...................................................................................................15

NY DCL § 274 ...................................................................................................15

NY DCL § 275 ...................................................................................................15

NY DCL § 277 ...................................................................................................15

**Rules**

FED. R. CIV. P. 8(a)(2) ......................................................................................4

FED. R. CIV. P. 8(d)(2) ......................................................................................4

FED. R. CIV. P. 8(d)(2)-(3) ...............................................................................4

FED. R. CIV. P. 12(b)(6) ...................................................................................4

FED. R. CIV. P. 7012 ........................................................................................4

**Other Authorities**

Edward R. Morrison, "Extraterritorial Avoidance Actions: Lessons From
    Madoff," 9 BROOK. J. CORP. FIN. & COMM. L. 268 (Fall 2014) .........................................8, 12

American Bankruptcy Institute, 2012-2014 Final Report and Recommendations,
    Commission to Study the Reform of Chapter 11, at 169 (2014),
    https://commission.abi.org/full-report ...................................................................................20

H.R. REP. NO. 95-595 (1st Sess. 1977), reprinted in 1978 U.S.C.C.A.N. 5964 .........................14

https://law.utexas.edu/faculty/jay-l-westbrook/............................................................................10

Jay L. Westbrook, "Avoidance of Pre-Bankruptcy Transactions in Multinational
    Bankruptcy Cases," 42 TEX. INT'L L.J. 899 (Summer 2007)....................................................10

Katelyn Trionfetti, "The Use of Foreign Avoiding Powers Under Section
    1521(a)(7) in Chapter 15 Cases," 21 AM. BANKR. INST. L. REV. 279 (2013).........................18

Plaintiff National Bank of Anguilla (Private Banking & Trust) Ltd. (the "<u>Debtor</u>"), by and through its counsel, hereby submits this memorandum of law in opposition to National Bank of Anguilla Ltd.'s ("<u>NBA</u>") Motion to Dismiss the Amended Complaint [ECF No. 41] (the "<u>Motion to Dismiss</u>") and the Memorandum of Law in Support of the Motion to Dismiss [ECF No. 42] ("<u>NBA Br.</u>").

## <u>PRELIMINARY STATEMENT</u>

NBA knowingly, and for a period of several years, "upstreamed" the Debtor's deposits, transferred those monies to accounts in New York and elsewhere in the United States, and failed to return tens of millions of dollars of that money, instead transferring it to, among others, its co-defendants in this case. Despite this years-long campaign, NBA now seeks (with respect to claims against it): (i) to dismiss the Debtor's Amended Complaint (the "<u>Complaint</u>" or "<u>Compl.</u>") based upon *forum non conveniens*, (ii) to stay the Complaint based on international comity, (iii) to dismiss the Complaint based on the "act of state" doctrine, and (iv) to dismiss the Complaint for failure to state a claim upon which relief can be granted because (a) the Bankruptcy Code and New York Debtor and Creditor Law ("<u>NY</u> <u>DCL</u>") avoidance provisions do not apply extraterritorially and (b) section 550 of the Bankruptcy Code is inapplicable because there are no valid avoidance claims against NBA, and it has not filed a proof of claim.

As set forth in the Debtor's Brief in Opposition to the Motion to Dismiss filed by the Eastern Caribbean Central Bank ("<u>ECCB</u>"), *forum non conveniens* does not provide a basis to dismiss or stay this Adversary Proceeding, which involves, among other things, transfers of funds into and out of New York. In addition, the challenged transfers to NBA are domestic transfers that occurred in the United States when title passed. If any challenged transfer is foreign, the Bankruptcy Code and NY DCL avoidance provisions apply extraterritorially.

The "act of state" doctrine also does not apply here because it does not apply to commercial activity or to transfers occurring in the United States, such as here. And lastly,

section 502(d) applies regardless of the fact that NBA has not filed a proof of claim because the Debtor has stated valid avoidance claims against NBA and no bar date has been set.

Accordingly, this Court should deny the Motion to Dismiss.

## FACTUAL BACKGROUND

The Debtor is a commercial offshore bank headquartered in Anguilla and established to provide banking services to non-residents of Anguilla. Compl. ¶ 22.[1] Approximately 120 of the Debtor's depositors (or 16%) are located in the United States. *Id.* The Debtor was licensed and regulated by the Anguilla Financial Services Commission ("FSC") to carry on offshore banking business in Anguilla. *Id.* ¶ 36. Defendant National Bank of Anguilla Ltd. ("NBA") is incorporated pursuant to the laws of Anguilla as a private limited liability company and is the Debtor's sole shareholder. *Id.* ¶ 23. Beginning before, and continuing through the Conservatorship, NBA upstreamed the Debtor's funds to Bank of America ("BofA") accounts in the name of NBA in New York City and elsewhere in the United States (collectively, the "Account"). *Id.* ¶ 11. This practice continued until April 22, 2016 when NBA ceased banking operations (discussed below). *Id.* ¶ 52.

The ECCB is the central bank of Anguilla and the monetary authority and regulator of the domestic, onshore banking system in Anguilla. *Id.* ¶ 33. ECCB is the regulator of NBA and defendant National Commercial Bank of Anguilla, Ltd. ("NCBA"), but not of the Debtor. *Id.* ¶ 25. On August 12, 2013, ECCB placed NBA into conservatorship pursuant to powers conferred on ECCB by the Eastern Caribbean Central Bank Agreement Act (the "Conservatorship"). *Id.* ¶ 44. During the Conservatorship, ECCB appointed individuals to serve as a conservator of NBA (each a "Conservator Director"). *Id.* ¶¶ 47-48. The Conservator Directors operated under close control and supervision of, and on behalf and at the direction of, ECCB. *Id.* ¶¶ 48, 51. From August 12, 2013 to April 22, 2016 (the "Conservatorship Period"), the affairs of NBA were

---

[1] References to "Compl." are to the Amended Complaint dated March 20, 2017 [ECF No. 32]. The relevant facts are set forth only briefly herein, and any terms not defined herein shall have the meaning ascribed to them in the Amended Complaint.

subject to the control of ECCB by virtue of the Conservatorship and the Conservator Directors appointed by ECCB. *Id.* ¶ 51.

Although ECCB had no regulatory authority over the Debtor, the Conservator Directors exercised control over the Debtor. On or about August 15, 2013, ECCB or Mr. Martin Dinning, as Conservator Director, dismissed the Debtor's appointed directors. *Id.* ¶ 62. Thereafter, and until March 24, 2016 (the "Relevant Period"), the Debtor's affairs, including day-to-day and strategic management, were conducted under the management and control of, the Conservator Director appointed by ECCB. *Id.* ¶ 63. ECCB took no steps to undo or remedy this situation despite its lack of regulatory or other authority over the Debtor. *Id.* ¶ 65.

During the Relevant Period, the Conservator Directors (acting on behalf of the Debtor despite their lack of authority to do so) procured or permitted the payment to the Account or to NBA of (i) all monies received by the Debtor from depositors denominated in U.S. Dollars and (ii) the proceeds of all assets of the Debtor realized or collected during the Relevant Period, also denominated in U.S. Dollars (together, the "Funds"). *Id.* ¶71. Following his appointment, each Conservator Director continued to allow the Debtor's customers to deposit money into their accounts. *Id.* ¶ 87.

On April 22, 2016, ECCB appointed a receiver to NBA and, at 4:00 p.m. on April 22, 2016, NBA ceased banking operations in Anguilla. NBA's banking operations were transferred on April 22, 2016 at 4:00 p.m. to a newly-established bank, the NCBA, which is wholly-owned by the Government of Anguilla. *Id.* ¶ 52. After 4:00 p.m. on April 22, 2016, NCBA asserted ownership of NBA's valuable assets, including, without limitation, the Funds in the Account. *Id.* ¶ 53. Thereafter, in June and July 2016, NCBA transferred not less than US$1.72 million of the Funds out of the Account to another account under NCBA's control. *Id.*

NBA also transferred substantial Funds to ECCB. As detailed on Exhibit C to the Amended Complaint, NBA transferred a total of US$30,574,626.40 to ECCB and received only US$3,002,180 from ECCB during the period of January 2, 2013 through April 11, 2016. Accordingly, NBA transferred US$27,572,446.40 more to ECCB than NBA received from

ECCB during that time period. *Id.* Both the Debtor and NBA were insolvent at the time of the foregoing transfers or rendered insolvent by such transfers. *Id.* ¶¶ 176, 238. As such, the Debtor seeks to avoid these transfers, and has properly alleged its entitlement to do so.

## ARGUMENT

### I.       THE DEBTOR STATES CLAIMS UPON WHICH RELIEF CAN BE GRANTED

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 7012, is "designed to test the legal sufficiency of the complaint, and thus does not require the Court to examine the evidence at issue." *See DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996) (citations omitted). A court "must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences" in the plaintiff's favor. *In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 353 (S.D.N.Y. 2011) (citing *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003)). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The allegations need only meet the "plausibility" standard, such that they "nudge[] the[] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 680, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). A claim is plausible if "factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. A pleading is sufficient if it provides "enough fact to raise a reasonable expectation that discovery will reveal evidence." *Twombly*, 550 U.S. at 556.

A party may plead "2 or more statements of a claim … alternatively or hypothetically ... regardless of consistency." FED.R.CIV.P. 8(d)(2)-(3). "If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." FED.R.CIV.P. 8(d)(2); *see also Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 754 F.Supp. 37, 40 (S.D.N.Y. 1991).

**A.**    **The Presumption Against Extraterritoriality is Rebutted Because (1) the Transfers Are Domestic or (2) Congress Has Given Clear, Affirmative Indication that the Bankruptcy Code's Avoidance Provisions Apply Extraterritorially**

"Congress has the authority to enforce its laws beyond the territorial boundaries of the United States." *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248, 111 S. Ct. 1227, 1230, 113 L. Ed. 2d 274 (1991). The "presumption against extraterritoriality," however, is a "longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Id.* (internal quotation marks and citations omitted); *accord Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 248, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010). The presumption "serves to protect against unintended clashes between our laws and those of other nations which could result in international discord." *Arabian Am. Oil Co.*, 499 U.S. at 248. The presumption "nevertheless must give way when Congress exercises its undeniable 'authority to enforce its laws beyond the territorial boundaries of the United States.'" *French v. Liebmann (In re French)*, 440 F.3d 145, 151 (4th Cir. 2006), *cert. denied*, 549 U.S. 815 (2006) (quoting *Arabian Am. Oil. Co.*, 499 U.S. at 248).

"The presumption against extraterritoriality involves an exercise in statutory interpretation and a two-step analysis which can be examined in either order." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, Adv. P. No. 08-01789 (SMB), 2016 WL 6900689, at *3 (Bankr. S.D.N.Y. Nov. 21, 2016) (Bernstein, J.); *RJR Nabisco, Inc. v. European Cmty.*, 136 S.Ct. 2090, 2101 (2016). The "two steps" are, "first, whether the factual circumstances at issue require an extraterritorial application of the relevant statutory provision; and second, if so, whether Congress intended for the statute to apply extraterritorially." *Hosking v. TPG Capital Mgmt., LP (In re Hellas Telecomms. (Luxembourg) II SCA)*, 526 B.R. 499, 514 (Bankr. S.D.N.Y. 2015) (Glenn, J.) (internal quotations omitted) (quoting *SIPC. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Secs.)*, 513 B.R. 222, 226 (S.D.N.Y. 2014) (Rakoff, J.) (citing *Morrison*, 561 U.S. at 255-57)).

### 1.    The Transfers Are Domestic Transfers

In determining whether application of a statute is extraterritorial, rather than domestic, the Court must look to the "'focus' of congressional concern," *Morrison*, 561 U.S. at 266, and determine the "objects of the statute's solicitude." *Morrison,* 561 U.S. at 267; *In re Hellas Telecomms.*, 526 B.R. at 514. If conduct that is the statute's focus occurred in the U.S., "the case involves a permissible domestic application even if other conduct occurred abroad." *RJR Nabisco*, 136 S.Ct. at 2101; *see In re Madoff*, 2016 WL 6900689, at *3 (quoting *Nabisco*); *Environmental Defense Fund, Inc. v. Massey*, 986 F.2d 528, 531 (D.C. Cir. 1993) ("Even where the significant effects . . . are felt outside U.S. borders," there is no "problem of extraterritoriality, so long as the conduct which Congress seeks to regulate occurs largely within the United States.").

As the Fourth Circuit held, Section 548 does not focus on the property that was transferred. *See In re French*, 440 F.3d at 150; *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501, 524 (Bankr. S.D.N.Y. 2012) (Lifland, J.). The "focus" of the avoidance and recovery provisions is on the "initial transfers that deplete the bankruptcy estate and not on the recipient of the transfers or the subsequent transfers." *In re BLMIS*, 480 B.R. at 524; *see generally Secs. Investor Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff Secs.)*, 513 B.R. 222, 227 (S.D.N.Y. 2014). Thus, "the **critical factor**" is "**where the transfer occurred**." *In re Madoff*, 2016 WL 6900689, at *19 (emphasis added).

The location, citizenship or residence of parties does not determine where a transfer occurred. *See Loginovskaya v. Batratchenko*, 764 F.3d 266, 274 (2d Cir. 2014) ("a party's residency or citizenship is irrelevant to the location of a given transaction.") (involving Commodities Exchange Act) (internal quotation marks omitted); *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 70 (2d Cir. 2012) (involving Securities Exchange Act of 1934) (same); *In re Madoff*, 2016 WL 6900689, at *19 (quoting *Batratchenko* and *Absolute*). "As the Second Circuit explained in *Absolute*, foreign entities can engage in domestic transfers." *In re*

- 6 -

*Madoff*, 2016 WL 6900689, at *25. Thus, the fact that NBA is a foreign entity is irrelevant and does not determine the location of a transfer under the Bankruptcy Code.[2]

One must also "distinguish between the transfer and the steps necessary to carry it out." *In re Madoff*, 2016 WL 6900689, at *19 (citing *Batratchenko*). The "[d]irection to wire transfer money to U.S. is insufficient to demonstrate a domestic transaction." *Batratchenko*, 764 F.3d at 275; *see also In re Madoff*, 2016 WL 6900689, at *20. "To overcome the presumption against extraterritoriality, the Trustee must therefore allege facts showing that the actual transfer of funds occurred domestically." *In re Madoff*, 2016 WL 6900689, at *27.

In determining the "the critical factor – where the transfer occurred," a court should focus on where the "**transfer of title** or the point of irrevocable liability for such an interest occurred." *Batratchenko*, 764 F.3d at 274 (emphasis added); *In re Madoff*, 2016 WL 6900689, at *25 ("The single most important factor . . . is obvious; where did the subsequent transfer—the exchange of cash and passage of title—occur.").[3] Here, in an initial transfer, legal title was transferred when personnel (at the direction of the Conservator Directors) deposited Funds into the Account – in the United States – titled in the name of NBA. At that point, NBA had irrevocable liability to the Debtor for the Funds in the Account. The transfer of legal title therefore occurred domestically. *See In re BLMIS*, 480 B.R. at 525 (transfer occurred domestically where transfers were made "to Fairfield Sentry's New York HSBC account"); *In re Madoff*, 2016 WL 6900689, at *20 n.19 ("[I]f title to the cash passed to the Subsequent Transferee when it reached a U.S. correspondent bank account, and the Subsequent Transferee was then free to use the money as it saw fit, the transfer occurred domestically under the Second Circuit case law"). The Debtor has alleged a domestic transfer and the supporting facts, thereby overcoming the presumption against

---

[2] Citizenship or residency may "support the inference that the transaction is domestic, [but] the focus is the location of the transfer and not the location of the parties to the transfer." *In re Madoff*, 2016 WL 6900689, at *19 (citing *Absolute Activist*, 677 F.3d at 69).

[3] Notably, the Supreme Court rejected the "conducts and effects" test as "complex in formulation and unpredictable in application." *Morrison*, 561 U.S. at 248, 257. The "component events" test employed by some courts for determining whether a transaction is foreign or domestic (*e.g.*, *Maxwell*, 186 B.R. at 217; and *In re Madoff Secs.*, 513 B.R. at 227) involves "the type of analysis that *Morrison* rejected." *See In re Madoff*, 2016 WL 6900689, at *21.

extraterritoriality. *See Absolute Activist*, 677 F.3d at 68 ("[I]t is sufficient for the plaintiff to allege that title to the [security] was transferred within the United States"); *Batratchenko*, 764 F.3d at 274 (quoting *Absolute Activist*).[4]

Moreover, the liability of subsequent transferees is not subject to the presumption against extraterritoriality. *See Spizz v. Goldfarb Seligman & Co. (In re Ampal-Am. Israel Corp.),* 562 B.R. 601, 613 (Bankr. S.D.N.Y. 2017) (Bernstein, J.) ("Judge Lifland explained that the focus of the avoidance and recovery provisions is the initial transfer that depletes the property that would have become property of the estate... I agree.") (citations omitted); *In re BLMIS*, 480 B.R. at 524 (explaining that the "focus" of the avoidance and recovery provisions is on the "initial transfers . . . and not on the recipient of the transfers or the subsequent transfers"). *Accord* Edward R. Morrison, "Extraterritorial Avoidance Actions: Lessons From Madoff," 9 BROOK. J. CORP. FIN. & COMM. L. 268, 271 (Fall 2014); *In re Madoff,* 2016 WL 6900689, at \*20 n.19 ("[T]he transferee may have made subsequent transfers from the U.S. correspondent bank account to other domestic transferees, and consequently, the funds may never have left the United States."). [5] Accordingly, the Complaint alleges domestic transfers and the supporting facts to demonstrate plausible claims. Accordingly, the Motions to Dismiss should be denied.

### 2.    Congress Has Given a Clear, Affirmative Indication that the Bankruptcy Code's Avoidance Provisions Apply Extraterritorially

"The presumption against extraterritoriality does not require us to adopt such a constricted interpretation. While the presumption can be overcome only by a clear indication of

---

[4] In a footnote, one District Judge concluded that use of a "correspondent" bank account was insufficient to prove a domestic transfer. *See In re Madoff Secs.*, 513 B.R. at 228 n.1. That conclusion has been criticized based on the Second Circuit's subsequent holding in *Batratchenko. See In re Madoff*, 2016 WL 6900689, at \*20 n.19 ("The Court is bound to apply the District Court's ruling on the use of a correspondent bank account. Nevertheless, if title to the cash passed to the Subsequent Transferee when it reached a U.S. correspondent bank account, and the Subsequent Transferee was then free to use the money as it saw fit, the transfer occurred domestically under the Second Circuit case law discussed earlier."). This Court is not bound by the District Judge's conclusion in *In re Madoff Secs. See Barnett v. Jamesway Corp. (In re Jamesway Corp.)*, 235 B.R. 329, 348 (Bankr. S.D.N.Y. 1999) ("We find that where the bankruptcy court sits in a multi-judge district, it is not bound by principles of *stare decisis* by the decision of a district court judge in that district."); *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Meyerson & Casey*, 160 B.R. 882, 898 (Bankr. S.D.N.Y. 1993).

[5] *But see In re Madoff Secs.*, 513 B.R. at 227 (concluding that the focus of Bankruptcy Code § 550(a)(2) is the subsequent transfer rather than the initial transfer).

extraterritorial effect, an express statement of extraterritoriality is not essential. 'Assuredly context can be consulted as well.' *Morrison*, [561 U.S.] at 265, 130 S.Ct. 2869. Context is dispositive here." *RJR Nabisco, Inc.*, 136 S.Ct. at 2102; *Morrison*, 561 U.S. at 265 (a statute does not have to provide that "this law applies abroad.").

> Section 541(a) and subsection (3) of the Bankruptcy Code provide as follows:
>
> > (a) The commencement of a case . . . creates an estate . . . comprised of all the following property, *wherever located* and by whomever held:
> >
> > . . .
> >
> > (3) Any interest in property that the trustee recovers under section . . . 550.

11 U.S.C. § 541(a)(3). The fact that Congress provided for the recovery of property "wherever located" unmistakably establishes that Congress intended for the avoidance powers to apply to property "wherever located" and by whomever held.

Courts have unanimously concluded that "property of the estate" has extraterritorial application because it applies to property "wherever located" under section 1334(e)(1) of title 28, U.S. Code. *See Lamonica v. N. of Eng. Protecting and Indem. Assoc. Ltd. (In re Probulk Inc.)*, 407 B.R. 56, 61 (Bankr. S.D.N.Y. 2009) ("Section 1334(e)(1) gives the district court, and by referral this court, exclusive jurisdiction 'of all the property, **wherever located**, of the debtor as of the commencement of such case, and of property of the estate.'") (emphasis added).

In fact, although **nothing** in Section 362 – which is in chapter 3 of title 11 –evidences an intent for the automatic stay to apply extraterritorially, courts have concluded that the automatic stay applies extraterritorially because it protects property of the estate "wherever located" under Section 541(a). *See SIPC. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 474 B.R. 76, 82 (S.D.N.Y. 2012) ("[T]he extraterritorial jurisdiction of the United States courts for these purposes is *in personam* rather than *in rem*. If a creditor causes property of a title 11 estate to be seized in a foreign country, that creditor has violated the automatic stay.") (quoting *Sinatra v. Gucci (In re Gucci)*, 309 B.R. 679, 683–84 (S.D.N.Y. 2004)); *Probulk*, 407 B.R. at 61; *Nakash v. Zur (In re Nakash)*, 190 B.R. 763, 768 (Bankr. S.D.N.Y. 1996);

*Kismet Acquisition LLC v. Icenhower (In re Icenhower),* 757 F.3d 1044, 1051 (9th Cir. 2014); *GMAM Inv. Funds Trust I v. Globo Comunicacoes e Participacoes S.A. (In re Globo Comunicacoes e Participacoes S.A.*), 317 B.R. 235, 250 (S.D.N.Y. 2004).

The scope of the power to avoid transfers – which is in chapter 5 of title 11 with Section 541 – also should be determined by reference to the "wherever located" language in Section 541(a) of the Bankruptcy Code. Otherwise, the "wherever located" text in section 541(a), the preamble paragraph, is read out of subsection 541(a)(3), which makes property of the estate any property "wherever located" recoverable under section 550 of the Bankruptcy Code. In other words, limiting the avoidance powers to domestic transfers would (i) render surplusage the "wherever located" text in Section 541(a) with respect to *subsection* 541(a)(3) and (ii) be inconsistent with the extraterritorial scope of Section 362 (which is not in chapter 5 of title 11).

Professor Jay L. Westbrook, a leading scholar in international insolvency recognizes the extraterritorial effect of the avoidance provisions of the Bankruptcy Code. Professor Westbrook was the United States Reporter for the American Law Institute's Transnational Insolvency Project and led the United States delegation to the UN (UNCITRAL) conference that created the Model Law on Cross-Border Insolvency. *See* https://law.utexas.edu/faculty/jay-l-westbrook/. He has declared that Section 541(a)(3) "strongly suggests that Congress intended the reach of those powers to be co-extensive with the broad, global embrace of its definition of estate property." Jay L. Westbrook, "Avoidance of Pre-Bankruptcy Transactions in Multinational Bankruptcy Cases," 42 TEX. INT'L L.J. 899, 908 (Summer 2007).

The United States Court of Appeals for the Fourth Circuit, the only Federal Court of Appeals to have addressed the issue, held that section 548 of the Bankruptcy Code applies extraterritorially. *See In re French*, 440 F.3d at 152. The Court reasoned as follows:

> Section 541 defines "property of the estate" as, *inter alia*, all "interests of the debtor in property." 11 U.S.C. § 541(a)(1). In turn, § 548 allows the avoidance of certain transfers of such "interest[s] of the debtor in property." 11 U.S.C. § 548(a)(1). By incorporating the language of § 541 to define what property a trustee may recover under his avoidance powers, **§ 548 plainly allows a trustee to avoid any transfer of property that *would have been* "property of the**

- 10 -

> estate" prior to the transfer in question - as defined by § 541 - **even if that property is not "property of the estate" *now***. *Cf. Begier v. IRS*, 496 U.S. 53, 58, 59 n.3, 110 S. Ct. 2258, 110 L. Ed. 2d 46 (1990) (reaching a similar conclusion about another avoidance provision, § 547 of the Bankruptcy Code); *Cullen Ctr. Bank & Trust v. Hensley (In re Criswell)*, 102 F.3d 1411, 1416 (5th Cir. 1997) ("These § 541 'property of the estate' definitions have been directly linked with the term 'interest of the debtor in property' under § 547(b)."). Through this incorporation, Congress made manifest its intent that § 548 apply to all property that, absent a prepetition transfer, would have been property of the estate, wherever that property is located.

*In re French*, 440 F.3d at 152 (emphasis added). The Fourth Circuit concluded that Congress "demonstrated an affirmative intention to allow avoidance of transfers of foreign property that, but for a fraudulent transfer, would have been property of the debtor's estate. Therefore, the presumption against extraterritoriality does not prevent application of § 548 here." *Id.*

The Supreme Court expressly declared that the "scope of" the "property of the debtor," as employed in Section 548, is analogous to "property of the estate," as employed in Section 541:

> Because the purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate-the property available for distribution to creditors-"property of the debtor" subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings. For guidance, then, **we must turn to § 541, which delineates the scope of** "property of the estate" **and serves** as the **postpetition analog to** § 547(b)'s "**property of the debtor**."

*Begier v. IRS*, 496 U.S. 53, 58-59 (1990). Like Section 541 – its postpetition analog – the "scope of" property of the debtor under Section 548 includes transferred property "wherever located."

Judge Gerber also held that avoidance provisions of the Bankruptcy Code have extraterritorial effect. Discussing *French*, Judge Gerber declared that "section 548 applies extraterritorially *not* because it provides for recovery of property that is already property of the estate, but rather, because section 548 provides for the recovery of property that *would have been* property of the estate—*i.e.* property *worldwide* in which the debtor would have had an interest—but for the fraudulent transfer." *Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 543 B.R. 127, 152 (Bankr. S.D.N.Y. 2016).

- 11 -

Judge Gerber agreed with Professor Westbrook that Section 541(a)(3) of the Bankruptcy Code strongly supports a finding that Section 548 extends extraterritorially. Judge Gerber declared that "[i]t would be inconsistent (such that Congress could not have intended) that property located anywhere in the world could be property of the estate once recovered under section 550, but that a trustee could not avoid the fraudulent transfer and recover that property." *In re Lyondell Chem. Co.*, 543 B.R. at 154. Judge Lifland also held that the Bankruptcy Code avoidance provisions have extraterritorial effect. *See In re BLMIS*, 480 B.R. at 523 ("Congress expressed clear intent to permit" extraterritorial application of section 550).[6]

As Professor Edward R. Morrison recognized, 28 U.S.C. § 1334(e) provides context supporting Congress' unmistakable intent that Bankruptcy Code avoidance provisions apply extraterritorially. See Morrison, "Extraterritorial Avoidance Actions: Lessons from Madoff," 9 BROOK. J. CORP. FIN. & COM. L. at 279-82. The reference in Section 1334(e) to "wherever located" applies to both "property of the estate" and "property of the debtor." See 28 U.S.C. § 1334(e); Morrison, 9 BROOK. J. CORP. FIN. & COM. L. at 278 n.81.

The Second Circuit's decision in *FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125 (2d Cir. 1992),[7] that fraudulently transferred property does not become property of the estate

---

[6] *See also Weisfelner v. NAG Investments, LLC (In re Lyondell Chemical Co.)*, Order Denying NAG's Motion to Dismiss, Case No. 09-10023 (MG), Adv. Pro. No. 11-01844 (MG), at 7 n.3 (Glenn, J.) ("Although the Court is not bound by the January 2016 Decision, the Court finds, at this stage of the case, that Judge Gerber's reasoning regarding the extraterritorial reach of section 548 is persuasive. The Court may consider the issue further upon a full evidentiary record at trial."). District Judge Rakoff and Bankruptcy Judge Bernstein have held that the Bankruptcy Code avoidance provisions do not have extraterritorial effect. *See In re Madoff Secs.*, 513 B.R. at 231 (Rakoff, J.), and *Spizz v. Goldfarb Seligman & Co. (In re Ampal-Am. Israel Corp.)*, 562 B.R. 601, 612 (Bankr. S.D.N.Y. 2017) (Bernstein, J.).

[7] *See also Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 212 (2d Cir. 2014) ("Our case law is clear that assets targeted by a fraudulent conveyance action do not become property of the debtor's estate under the Bankruptcy Code until the Trustee obtains a favorable judgment."). *But see Deutsche Bank Trust Co. Ams. v. Large Private Beneficial Owners (In re Tribune Co. Fraudulent Conveyance Litig.)*, 818 F.3d 98, 117 (2d Cir. 2016) ("Whether, and to what degree, fraudulent conveyance claims become the property of a bankrupt estate was . . ., and now, [is] anything but clear. The principal Supreme Court precedent held that such claims are the property of the debtor's estate. *Trimble v. Woodhead*, 102 U.S. 647, 649, 26 L. Ed. 290 (1880). It is a very old decision but has not been expressly overruled. Subsequent court of appeals decisions are bountiful in contradictory statements regarding the property issue. *Compare* . . . *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 212 (2d Cir. 2014) . . . *with Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1042 (2d Cir. 1986) (noting that causes of action alleging violation of fraudulent conveyance laws would be property of the estate) . . . .").

until such property is recovered, is not contrary to the Fourth Circuit's holding in *French* (or the Supreme Court's analysis in *Begier*). *Colonial Realty* dealt with an entirely separate issue:

> In *Colonial Realty*, the Second Circuit did indeed conclude that fraudulently conveyed property does not become property of the estate until it has been recovered. But that is just a matter of timing. It is not at all the same thing as finding a lack of Congressional intent to allow property to be recovered on an extraterritorial basis. The *Colonial Realty* court noted that, pursuant to section 541(a)(1), property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case," and pursuant to section 541(a)(3), property of the estate also includes "[a]ny interest in property that the trustee recovers" under specified Bankruptcy Code provisions, including section 550 — which comes after the commencement of the case.

*In re Lyondell Chem. Co.*, 543 B.R. at 153. In short, the Second Circuit "recognized that sections 541(a)(1) and (a)(3) were speaking as of different times." *Id.* "That plainly correct observation by the Second Circuit falls far short of holding that property not in the estate as of the commencement of the case cannot be brought into the estate because it is in a foreign locale." *Id.* at 154. *In re Colonial Realty* "addresses a wholly different issue." *Id.* at 155.[8] For the foregoing reasons, the Bankruptcy Code avoidance provisions apply extraterritorially, and the Motion to Dismiss should be denied.

Although the Court need not reach the issue to find that the Bankruptcy Code applies extraterritorially, a debtor has an equitable interest in property that has been fraudulently transferred and is recoverable by the debtor. *See Cullen Ctr. Bank & Trust*, 102 F.3d at 1417; *AngioDynamics, Inc. v. Biolitec AG*, 711 F.3d 248, 250 (1st Cir. 2013); *Paradigm BioDevices, Inc. v. Centinel Spine, Inc.*, No. 11-cv-3489 (JMF), 2013 WL 1915330, at *3 (S.D.N.Y. May 9,

---

[8] From a practical perspective, rendering the Bankruptcy Code's avoidance provisions inoperative at the nation's borders would enable unfortunate gamesmanship. As Judge Lifland concluded, "a debtor could end run the Code by 'simply arrang[ing] to have the transfer made overseas,' thereby shielding them from United States law and recovery by creditors." *In re BLMIS,* 480 B.R. 501, 525 (Bankr. S.D.N.Y. 2012) (quoting *Maxwell Commc'n Corp. PLC v. Societe Gen. PLC (In re Maxwell Commc'n Corp. PLC)*, 186 B.R. 807, 816 (S.D.N.Y. 1995), *aff'd*, 93 F.3d 1036 (2d Cir. 1996)). "Congress did not intend for this absurd result of according 'an invariable exemption from the Code's operation to those who leave our borders to engage in fraud.'" *Id.* (quoting *In re French*, 440 F.3d at 155 (Wilkinson, J., concurring)). "This is especially so given the prevalence of special purpose offshore entities engaging in financial and commercial activities in the United States." *Id.* at 525. The ease with which a debtor could protect transfers by making them foreign transfers, however, evidences that Congress would never have intended for the Bankruptcy Code to be so interpreted.

2013) (citing *AngioDynamics*). As all of a debtor's legal and "equitable" interests are property of the estate under Section 541(a)(1) of the Bankruptcy Code, the Debtor's equitable interest in the transferred Funds "wherever located" constitutes property of the estate. Although some panels of the Second Circuit have held that transferred property is not property of the estate until recovered,[9] that does not preclude a debtor's equitable interest in such property from being property of the estate. The Debtor's claim to recover that equitable interest is "property of the estate" under Section 541(a)(1) that may be enforced extraterritorially.

**B.    New York Debtor and Creditor Law Applies to the Claim at Issue.**

This Court applies the choice-of-law rules of New York, the forum state. *See Geron v. Seyfarth Shaw LLP (In re Thelen LLP)*, 736 F.3d 213, 219 (2d Cir. 2013) (applying New York's choice-of-law rules to state-law fraudulent transfer claims). The first step in New York's choice of law analysis is to "determine whether there is an 'actual conflict' between the relevant laws of the implicated jurisdictions." *See In re Hellas Telecomms.*, 524 B.R. at 516 (citing *GlobalNet Financial.com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 382 (2d Cir. 2006)); *In re Allstate Ins. Co. v. Stolarz*, 81 N.Y.2d 219, 613 N.E.2d 936, 937, 597 N.Y.S.2d 904 (N.Y. 1993).

"An actual conflict exists where such laws provide different substantive rules; such differences must be relevant to the issue to be determined and have a 'significant *possible* effect on the outcome of the trial.'" *In re Hellas Telecomms.*, 524 B.R. at 516 (quoting *Fin. One Pub.*

---

[9] *See, e.g., In re Colonial Realty Co.*, 980 F.2d at 131. The legislative history accompanying section 541 of the Bankruptcy Code indicates that recoverable property – "wherever located" – is property of the estate. The legislative history provides that property of the estate "includes all kinds of property, including tangible or intangible property, causes of action . . . and all other forms of property currently specified in section 70a of the Bankruptcy Act." H.R. REP. NO. 95-595, at 367 (1st Sess. 1977), reprinted in 1978 U.S.C.C.A.N. 5964, at 6323). Section 70(a)(4) of the Bankruptcy Act (repealed 1979) included "property transferred by [a debtor] in fraud of his creditors." Bankruptcy Act of 1898, § 70(a)(4), ch. 541, 30 Stat. 544, 566 (repealed 1979)). As Congress has not clearly evidenced a departure from the law under the former Bankruptcy Act, the Bankruptcy Code should be interpreted consistently with the former Bankruptcy Act. *See Dewsnup v. Tim*, 502 U.S. 410, 419, 112 S. Ct. 773, 779, 116 L. Ed. 2d 903 (1992) ("[T]his Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history."); *Pennsylvania Dept. of Pub. Welfare v. Davenport*, 495 U.S. 552, 563, 110 S. Ct. 2126, 2133, 109 L. Ed. 2d 588 (1990). It is questionable whether the Court is bound by the Second Circuit's decision in *In re Colonial Realty Co.* in light of the Supreme Court's prior holding in *Trimble v. Woodhead*, 102 U.S. 647, 649 (1880), and the Second Circuit's prior holding in *Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1042 (2d Cir. 1986), and more recent pronouncement in *In re Tribune Co. Fraudulent Conveyance Litig.*, 818 F.3d 98, 117 (2d Cir. 2016), that the issue is "anything but clear."

- 14 -

*Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331 (2d Cir. 2005) (emphasis in original) (citations and internal quotation marks omitted); *see also Elgin Sweeper Co. v. Melson Inc.*, 884 F. Supp. 641, 648 (N.D.N.Y. 1995) ("no true conflict exists" where "the relevant issue would turn out the same under both forums' law"). "If no actual conflict exists, and if New York is among the relevant jurisdictions, the court may simply apply New York law." *In re Hellas Telecomms.*, 524 B.R. at 516 (quoting *Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012)). "If the party advocating a choice of law analysis fails to demonstrate an actual conflict," then "no choice of law analysis need be undertaken" and courts will apply New York law. *See Park Place Entm't Corp. v. Transcon. Ins. Co.*, 225 F. Supp. 2d 406, 408 (S.D.N.Y. 2002); *In re Hellas Telecomms.*, 524 B.R. at 517 (quoting *Park Place*).

Here, NBA claims that Anguillan law applies. *See* NBA Br. p. 20 ("the DCL does not apply to the facts alleged by PBT"). NBA, however, does **not allege any conflict** of laws. For that reason alone, this Court should deny the Motion to Dismiss. *See, e.g.*, *Park Place Entm't Corp.*, 225 F. Supp. 2d at 408; *In re Hellas Telecomms.,* 524 B.R. at 517.

Although the Defendants do not specifically allege a conflict between the NY DCL constructive fraud provisions (NY DCL §§ 273, 274, 275, and 277) and Anguillan law, this Court has found a conflict to exist where foreign law does not recognize constructively fraudulent transfer. *See In re Hellas Telecomms.*, 524 B.R. at 517-18 (discussing United Kingdom and Luxembourg law).[10] Such is the case here. *See* Declaration of Eustella Fontaine, submitted herewith ("Fontaine Decl.") ¶¶ 13-14 (noting that neither the Anguilla Fraudulent Depositions Act nor common law provide for constructive fraud). "Upon the identification of an 'actual conflict' among fraudulent conveyance laws, the New York choice of law analysis requires the Court to apply the 'interest-analysis.'" *In re Hellas Telecomms.*, 524 B.R. at 518 (citing *Drenis v. Haligiannis*, 452 F. Supp. 2d 418, 427 (S.D.N.Y. 2006); *Lyman Commerce*

---

[10] There is no conflict between the intentional fraud claims under the NY DCL and the Anguillan Fraudulent Dispositions Act. Accordingly, the Motion to Dismiss as to the intentional fraud counts of the Complaint under the NY DCL (Counts VII) should be denied.

*Solutions, Inc. v. Lung*, No. 12-cv-4398 (TPG), 2014 WL 476307, at *3 (S.D.N.Y. Feb. 6, 2014)). "New York's interest analysis requires that 'the law of the jurisdiction having the greatest interest in the litigation will be applied and . . . the [only] facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict.'" *In re Thelen LLP*, 736 F.3d at 219 (alterations in original) (quoting *GlobalNet*, 449 F.3d at 384).

"[G]iven that fraudulent conveyance laws are 'conduct regulating,' the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *In re Hellas Telecomms.*, 524 B.R. at 519 (internal quotation marks omitted) (quoting *Lyman*, 2014 WL 476307, at *3). Here, New York law applies because the fraudulent transfers took place within New York's borders when the Debtor's Funds were deposited in the Account, which was titled in NBA's name. *See United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 215-16 (S.D.N.Y. 2002) (Canadian law applied to plaintiffs' fraudulent conveyance claim because "the conveyance alleged by [the plaintiffs] to be fraudulent—the transfer of funds held by [one defendant] to the [other defendants]—took place in Canada"); *In re Hellas Telecomms.*, 524 B.R. at 519 (quoting *United Feature Syndicate, Inc.*).[11]

"New York choice of law rules do not require a blind adherence to this rule." *In re Hellas Telecomms.*, 524 B.R. at 519. "But when the alleged wrongful conduct occurs in a place different from the place of the injury, the Second Circuit dictates that 'it is the place of the allegedly wrongful conduct that generally has superior 'interests in protecting the reasonable expectation of the parties who relied [on the laws of that place) to govern their primary conduct and in the admonitory effect that applying its law will have on similar conduct in the future.'" *Id.* (quoting

---

[11] In *In re Hellas Telecomms.*, this Court held that U.S. law did not govern the avoidability of transfers all of which were made from "bank accounts outside of the United States." 524 B.R. at 495; *see also In re Hellas Telecomms.*, 535 B.R. at 576 (noting that initial transfer was "made between English bank accounts"). Here, the transfers occurred in the United States when the Debtor's funds were deposited in the Account in the name of NBA, thereby transferring title to the funds, and/or when funds were disbursed from that Account to other bank accounts – many of which were located in the United States. *See* Ex. D to the Complaint.

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 50-51 (2d Cir. 2013) (quoting *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679, 684-85 (1985)). Here, the injury occurred partially in many countries because the Debtor was an offshore bank that did not deal in the Eastern Caribbean currency. Its depositors were from many countries, 16% of which depositors were United States' residents.[12] *See* Compl. ¶ 22. The transfers, however, occurred in New York when the Debtor's Funds were deposited into an account in NBA's name. For the foregoing reasons, New York law applies to the Debtor's claims under Section 544 of the Bankruptcy Code (and in its capacity as a creditor of NBA).

## C.    If Any Challenged Transfer is a Foreign Transfer, the NY DCL Applies Extraterritorially.

There is, as NBA notes, a presumption against the extraterritorial operation of New York law. *See Global Reins. Corp. v. Equitas Ltd.*, 18 N.Y.3d 722, 735, 946 N.Y.S.2d 71, 79, 969 N.E.2d 187, 195 (2012). New York's fraudulent transfer provisions, however, have been applied extraterritorially. *See, e.g., Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs. Ltd.*, No. 94-cv-5620, 1999 WL 64283, at *5 (S.D.N.Y. Feb. 8, 1999) (applying New York fraudulent conveyance law to conveyances that occurred in England); *Elgin Sweeper Co.*, 884 F. Supp. at 649-50 & n.12 (applying New York fraudulent conveyance law to conveyances that occurred in Canada where there was "no material difference in the application of the law of Ontario" and "a significant part of the . . . conveyances took place in New York). Based on those cases, Judge Rakoff declared that the "contention that the New York Fraudulent Conveyance Statute ought not to be given extraterritorial application is unfounded." *See Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr. Co.*, 375 F. Supp. 2d 257, 268 n.4 (S.D.N.Y. 2005) (Rakoff, J.). Judge Rakoff reasoned, in part, that "the New York Fraudulent Conveyance Act was enacted to enable creditors to know with certainty that they could rely upon property of their debtors, even if situated in another jurisdiction." *Id.* at 268 (citation omitted). Thus, the NY DCL applies here.

---

[12] The percentage of Debtor's depositors that are U.S. residents is likely understated. Many depositors maintain an address in Anguilla for mail or other forms of notice. The fact that the Account is for US-Dollar denominated transactions indicates that the depositors whose funds were directed to the Account are overwhelmingly not Anguillan citizens.

**D.      If Anguillan Law Applies, the Debtor Has Pled Claims Thereunder.**

The Debtor may assert Section 544 claims under Anguillan law. *See In re Madoff Secs.*, 513 B.R. at 231 ("Assuming that any such intentional fraud occurred, the Trustee here may be able to utilize the laws of the countries where such transfers occurred to avoid such an evasion while at the same time avoiding international discord."); *see also Fogerty v. Petroquest Res., Inc. (In re Condor Ins. Ltd.)*, 601 F.3d 319, 329 (5th Cir. 2010) (bankruptcy court could adjudicate foreign law claims); *In re Hellas Telecomms. (Luxembourg) II SCA*, 535 B.R. 543, 568 (Bankr. S.D.N.Y. 2015) (Glenn, J.) (discussing *Fogerty*); Katelyn Trionfetti, "The Use of Foreign Avoiding Powers Under Section 1521(a)(7) in Chapter 15 Cases," 21 AM. BANKR. INST. L. REV. 279, 286 (2013).

The Debtor has asserted an alternative claim against NBA under the Anguillan Fraudulent Dispositions Act as "applicable law" under Section 544 of the Bankruptcy Code (Count XIII). *See* Compl. ¶¶ 189-96. Thus, if Anguillan law applies, the Motions to Dismiss should be denied with respect to Counts XIII because the Complaint "state[s] a claim . . . under the law of at least one of the potentially applicable jurisdictions." *Compare Commerce and Indus. Ins. Co. v. U.S. Bank Nat'l Ass'n*, No. 07-cv-5731(JGK), 2008 WL 4178474, at *8 (S.D.N.Y. Sept. 3, 2008) (denying motion to dismiss where party stated a claim under the law of at least one of the potentially applicable jurisdictions) *with In re Hellas Telecomms.*, 524 B.R. at 521 (granting motion to dismiss where Court concluded that either Luxembourg or U.K. law applied and plaintiffs pleaded a claim only under New York law).

**E.      The Adversary Proceeding Should Not be Stayed Based on International Comity.**

NBA seeks to "stay" this Adversary Proceeding on the basis of international comity. NBA Br. pp. 14-17. Comity "is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Maxwell Commc'n Corp. v. Societe Generale (In re Maxwell Commc'n Corp.)*, 93 F.3d 1036, 1046 (2d Cir. 1996) (quoting *Hilton v. Guyot*, 159 U.S. 113, 163-64, 16 S.

Ct. 139, 40 L. Ed. 95 (1895)). Comity involves a "choice-of-law analysis to determine whether the application of U.S. law would be reasonable under the circumstances, comparing the interests of the United States and the relevant foreign state." *In re Madoff Secs.*, 513 B.R. at 231 (citing *Maxwell*, 93 F.3d at 1047-48).

International comity describes two doctrines. "[A]s a canon of construction, it might shorten the reach of a statute" (comity among nations) and it also might be "a discretionary act of deference by a national court to decline to exercise jurisdiction in a case properly adjudicated in a foreign state" (comity among courts). *See id.* at 1047; *In re Madoff*, 2016 WL 6900689, at *11. "Comity among courts is inapplicable here because there are no parallel foreign avoidance actions in which the Trustee seeks to recover from the . . . Transferees." *In re Madoff*, 2016 WL 6900689, at *11. Comity among nations also is inapplicable.

First, comity among nations may be appropriate to stay the exercise of the U.S. Bankruptcy Court jurisdiction where a plaintiff is trying to "reach around" foreign liquidation proceedings to recover assets to which foreign liquidators may stake a competing claim. *See, e.g.*, *In re Madoff Secs.*, 513 B.R. at 232 (SIPA trustee was seeking to "reach around such foreign liquidations in order to make claims to assert" on behalf of SIPA estate). Here, the Administrator does not seek to compete with the Debtor's Anguillan estate. The Administrator is asserting the Debtor's own claims – not "reaching around" – the Anguillan insolvency proceeding. In fact, the Anguillan court specifically authorized the Administrator to commence litigation in foreign jurisdiction. By an Order dated February 22, 2016, the Anguillan High Court specifically authorized the Administrator to act in "**any foreign jurisdiction** where he believes assets and property of the Offshore Banks may be Situate…[**to] commence [or] continue**…without further order of this Honorable Court **any proceeding or action…in a foreign jurisdiction** for the purpose of fulfilling his duties and obligations under" the February 22, 2016 order (emphasis added). Any consideration of comity actually militates in favor of assisting – not staying or impeding – the Administrator's pursuit of this Adversary Proceeding. *Cf. In re Madoff*, 2016 WL 6900689, at *11 ("Congress has explicitly recognized the central concept of comity under

chapter 15 of the Bankruptcy Code when providing additional assistance to foreign representatives"). It makes no sense to stay the Adversary Proceeding under the guise of international comity when the Anguillan court expressly authorized the Administrator to pursue claims like those at issue here. There is nothing "unreasonable" about this Court's exercise of jurisdiction over this Adversary Proceeding, and it should not be stayed.

Second, this Adversary Proceeding should not be stayed because it involves **domestic** transfers. *See In re Maxwell Commc'n Corp.*, 93 F.3d at 1051 (comity applied to transfers between foreign banks in London); *SIPC v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, Adv. P. No. 08-01789 (SMB), Adv. P. No. 11-02760 (SMB), 2017 WL 1806506, at *3 (Bankr. May 4, 2017) (comity applied to foreign subsequent transfers"); *see generally* American Bankruptcy Institute, 2012-2014 Final Report and Recommendations, Commission to Study the Reform of Chapter 11, at 169 (2014), https://commission.abi.org/full-report ("The Commissioners generally agreed with the notion that **foreign** transfers should be subject to the chapter 5 avoiding powers, but only if such application was consistent with principles of comity.") (emphasis added).

Third, Congress has decided how to apply international comity in the context of avoidable transfers. Discussing the differences between a foreign representative's powers in chapter 15 and 11 cases, this Court declared that, "[i]n an attempt to resolve or address these choice of law issues, the U.S. prohibits foreign representatives of ancillary chapter 15 cases from bringing avoidance actions under U.S. law, but permits foreign representatives of chapter 15 cases who have filed a corresponding plenary chapter 7 or 11 case to bring such claims. *Compare* 11 U.S.C. § 1521(a)(7), with *id.*§ 1523(a)." *In re Hellas Telecomms.*, 535 B.R. at 586. Therefore, Congress determined in Section 1523(a) that exercising jurisdiction over Bankruptcy Code avoidance claims is reasonable in a foreign representative's plenary chapter 11 case.

Fourth, principles of international comity do not justify staying this Adversary Proceeding pending resolution of any litigation in Anguilla. In *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33 (2d Cir. 1987), the Second Circuit adopted a two-part test to

- 20 -

determine whether enjoining a foreign suit accorded with interests of international comity. The "two threshold requirements" for such an injunction are "(1) the parties must be the same in both matters, and (2) resolution of the case before the enjoining court must be dispositive of the action to be enjoined." *Id.* at 35-36. Although here the Defendants seek to enjoin domestic litigation, the same test should apply to determine whether a stay furthers the interest of international comity. The litigation in Anguilla does not involve the same parties and could not involve all of the same claims. *See* Fontaine Decl. ¶¶ 15-35.[13] Moreover, no avoidance action is pending in the Debtor's claims against NBA and NCBA. Thus, resolution of the litigation in Anguilla will not dispose of this Adversary Proceeding.

Fifth, this Court has held that 28 U.S.C. § 1334(c)(1) prohibits abstention from an adversary proceeding related to a chapter 15 case even if the proceeding alleges claims under foreign law. *In re Hellas Telecomms.*, 535 B.R. at 587-88.[14] "Declining to decide a question of law on the basis of international comity is a form of abstention." *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 422 (2d Cir. 2005); *see In re Madoff*, 2016 WL 6900689, at *10 ("comity is a form of abstention"). If Congress did not provide for abstention of **foreign** law claims in an ancillary **chapter 15** proceeding, Congress could not have intended for this Court to abstain from deciding an avoidance action under **U.S. law** in a **plenary chapter 11**

---

[13] As ECCB notes, the Debtor has not brought claims against it in Anguilla relating to the specific conduct at issue herein. *See* Memorandum of Law in Support of the Eastern Caribbean Central Bank's Motion to Dismiss for Lack of Subject Matter Jurisdiction, Personal Jurisdiction, and Forum Non Conveniens [ECF No. 39] ("ECCB Br.") p. 4. Further, there currently are no claims pending against NBA by the Debtor in Anguilla in light of the High Court's decision to deny the application for leave to assert claims against NBA. *See* Fontaine Decl. ¶ 18. Thus, under no circumstance will the entirety of the claims in this action be litigated in Anguilla. All of the claims in this Adversary Proceeding could not be litigated in Anguilla because it does not recognize constructive fraudulent conveyance claims. *See* Fontaine Decl. ¶¶ 13-14. The Debtor's depositors' suit against the Conservator Directors (referenced on page 5 of the ECCB Br.) is of no moment as it involves different parties than this Adversary Proceeding. Finally, ECCB's reference to the "judicial review" application filed by the Debtor and another offshore bank in Anguilla (ECCB Br. p. 5) also is inapposite as that application seeks review of specific provisions of the Anguillan 2015 Banking Act and other laws, does not duplicate the claims or full parties herein, and was only filed to avoid a potential statute of limitations argument in Anguilla (which is why the Debtor promptly sought a stay of those proceedings, to which all parties except for ECCB consented, undoubtedly to preserve its argument herein). *See* Fontaine Decl. ¶¶ 33-35.

[14] In a subsequent opinion, this Court "conclude[d] that section 1334(c)(1) does not stand as an obstacle to application of *forum non conveniens*[.]" *Hosking v. TPG Capital Mgmt., LP (In re Hellas Telecomms. (Luxembourg) II SCA)*, 555 B.R. 323, 344 n.17 (Bankr. S.D.N.Y. 2016) (Glenn, J.).

proceeding relating to **domestic** transfers. *See generally Krys v. Farnum Place, LLC (In Re Fairfield Sentry Ltd.)*, 768 F.3d 239 (2d Cir. 2014) (''Chapter 15 does impose certain requirements and considerations that act as a brake or limitation on comity.'') (quoting *In re Vitro S.A.B. de C.V.*, 701 F.3d 1031, 1054 (5th Cir. 2012)). Accordingly, this Court should not stay this Adversary Proceeding based on international comity among nations.

F.     **The Debtor's Section 502(d) Claim Should Not be Dismissed.**

For the reasons set forth in the Debtor's Brief in Opposition to NCBA's Motion to Dismiss, which is incorporated by reference, this Court should not dismiss the section 502(d) claim (Count XXV) for failure to state a claim.

## II.     THE COMPLAINT SHOULD NOT BE DISMISSED ON *FORUM NON CONVENIENS* GROUNDS.

For the reasons set forth in the Debtor's Brief in Opposition to ECCB's Motion to Dismiss, which is incorporated by reference, the Complaint should not be dismissed on the grounds of *forum non conveniens*.

## III.     THE ACT OF STATE DOCTRINE IS INAPPLICABLE.

Interestingly, NBA[15] – and not ECCB – asserts that the "act of state" doctrine precludes this Court from adjudicating this action. *See* NBA Br. pp. 17-18. Under this doctrine, "the courts of one state will not question the validity of public acts (acts *jure imperii*) performed by other sovereigns within their own borders." *Republic of Austria v. Altmann*, 541 U.S. 677, 700, 124 S. Ct. 2240, 159 L. Ed. 2d 1 (2004). The act of state doctrine is separate from state sovereign immunity. Unlike foreign immunity, the act of state doctrine is not a jurisdictional defense but rather is a substantive defense on the merits that "requires courts to accept, as a rule for their decision, that the acts of foreign sovereigns taken within the foreign borders are valid." *Daventree Ltd. v. Republic of Azerbaijan*, 34 9 F. Supp. 2d 736, 754 (S.D.N.Y. 2004), *opinion clarified*, No. 02-cv-6356 (SHS), 2005 WL 2585227 (S.D.N.Y. Oct. 13, 2005).

---

[15] NCBA incorporates this argument by reference. NCBA Br. ¶ 1.

NBA asserts that the claims in this proceeding cannot be determined without first resolving whether the ECCB violated Anguillan law when it caused the Debtor to transfer Funds to NBA. *See* NBA Br. pp. 17-18.; *see Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 695, 96 S. Ct. 1854, 1861, 48 L. Ed. 2d 301 (1976) ("[T]he concept of an act of state should not be extended to include the repudiation of a purely commercial obligation owed by a foreign sovereign or by one of its commercial instrumentalities."). NBA claims that the alleged conduct occurred while NBA was under government control, and thus, a determination whether ECCB acted within its authority is a "must decide" prior to this litigation. NBA Br. p. 18.

However, the act of state doctrine is not applicable in this case. First, the Adversary Proceeding involves transfers that were made in the United States, not within Anguilla's borders. In addition, in *Alfred Dunhill of London*, the Supreme Court set forth two important requirements. First, in order for the doctrine to apply, the act complained of must involve an affirmative assertion of sovereign authority. The act-of-state doctrine is limited to laws, decrees, decisions, seizures, and other officially-authorized public acts. ECCB never promulgated an "official order" in its "officially authorized" capacity. And it could not because ECCB was never authorized to regulate the affairs of the Debtor – only the FSC had such authority. ECCB caused the Debtor to transfer its Funds to NBA without placing the Debtor in an official receivership, administration, or conservatorship. ECCB did not have "official capacity," within the meaning of the act of state doctrine, over the Debtor. Determination of the ECCB's scope of authority under Anguillan law is unnecessary. *See* Compl., Exhibit A (*Satay* Judgment).

Further, the doctrine "does not ... apply to the purely commercial conduct of a foreign sovereign." *Peterson Energia Inversora, S.A.U. v. Argentine Republic*, No. 15–cv–2739 (LAP), 2016 WL 4735367, at *7 (S.D.N.Y. Sept. 9, 2016); s*ee also Alfred Dunhill of London, Inc.*, 425 U.S. at 695. The only "decision" raised by NBA in its motion to dismiss is whether ECCB had authority when it "caused [the Debtor] to transfer its funds to NBA." That is purely commercial conduct as ECCB had no official or regulatory authority over the Debtor. Thus, the act of state doctrine does not bar Debtor's claims against NBA.

## <u>CONCLUSION</u>

For the foregoing reasons, the Debtor respectfully requests that the Court enter an Order

(a) denying the Motion to Dismiss and (ii) granting such further relief to the Debtor as is just.


Dated:  May 26, 2017                              REED SMITH LLP
            New York, New York

                                                          /s/ James C. McCarroll
                                                          James C. McCarroll
                                                          Jordan W. Siev
                                                          Kurt F. Gwynne (*pro hac vice*)
                                                          599 Lexington Avenue
                                                          New York, NY  10022-7650
                                                          Telephone:  (212) 521-5400
                                                          Facsimile:  (212) 521-5450
                                                          Email: jmccarroll@reedsmith.com
                                                                     jsiev@reedsmith.com
                                                                     kgwynne@reedsmith.com

                                                          *Counsel for the Debtor and Debtor in Possession*