**ALLEN & OVERY LLP**
Laura R. Hall
Justin L. Ormand
Rebecca R. Delfiner
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 610-6300

*Attorneys for Defendant*
*National Bank of Anguilla Ltd. (in receivership)*

<u>**Hearing Date and Time**</u>
**July 31, 2017 at 2:00 p.m.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| National Bank of Anguilla (Private Banking ) | Case No.: 16-11806 (MG) |
| & Trust) Ltd., ) | |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |
| ———————————————— ) | |
| National Bank of Anguilla (Private Banking ) | |
| & Trust) Ltd., ) | Case No.: 16-AP-01279 (MG) |
| Plaintiff. ) | |
| ) | |
| v. ) | |
| ) | |
| National Bank of Anguilla Ltd., National ) | |
| Commercial Bank of Anguilla Ltd., and ) | |
| Eastern Caribbean Central Bank, ) | |
| ) | |
| Defendants. ) | |
| ———————————————— ) | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NATIONAL BANK OF ANGUILLA LTD.'S MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ............................................................................................................................ 1

I.   THIS COURT IS NOT A CONVENIENT FORUM FOR LITIGATION AMONG WHOLLY ANGUILLAN PARTIES ABOUT ANGUILLAN CONDUCT .......................... 1

    A.   PBT's Decision To Sue In The United States Is Entitled To No Deference .................... 2

    B.   Anguilla Is An Adequate Alternative Forum ................................................... 4

    C.   The Private And Public Interests Tilt Decidedly In Favor Of Litigation In Anguilla ..... 5

II.  IF THIS CASE IS NOT DISMISSED, IT SHOULD BE STAYED PENDING THE OUTCOME OF THE ANGUILLAN PROCEEDINGS ........................................................ 6

III. THE ACT OF STATE DOCTRINE PRECLUDES THIS COURT FROM ADJUDICATING A CASE THAT DEPENDS ON ALLEGATIONS THAT A FOREIGN BANKING REGULATOR COMMITTED WRONGDOING ............................. 7

IV.  THE AMENDED COMPLAINT FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED ................................................................................................... 8

    A.   The Transfers At Issue Are Extraterritorial And The Bankruptcy Code's Avoidance Provisions Do Not Apply Extraterritorially ..................................................... 8

    B.   New York Law Does Not Apply And Even If It Did New York's Debtor Creditor Law Does Not Apply Extraterritorially ........................................................... 9

    C.   The Section 550 And 502(d) Claims Also Fail ................................................. 10

CONCLUSION ...................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd.*,
   No. 94 Civ. 5620(JFK), 1999 WL 64283 (S.D.N.Y. Feb. 8, 1999) ...................................... 10

*Armada (Singapore) Pte Ltd. v. Amcol Int'l Corp.*,
   No. 13 C 3455, 2017 WL 1062322 (N.D. Ill. Mar. 21, 2017) ............................................... 10

*Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*,
   155 F.3d 603 (2d Cir. 1998) .................................................................................................. 4

*China Trade & Dev. Corp. v. M.V. Choong Yong*,
   837 F.2d 33 (2d Cir. 1987) .................................................................................................... 7

*Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr. Co.*,
   375 F. Supp. 2d 257 (S.D.N.Y. 2005) ................................................................................. 10

*Elgin Sweeper Co. v. Melson Inc.*,
   884 F. Supp. 641 (N.D.N.Y. 1995) ..................................................................................... 10

*FOGADE v. ENB Revocable Trust*,
   263 F.3d 1274 (11th Cir. 2001) ............................................................................................ 8

*GFL Advantage Fund, Ltd. v. Colkitt*,
   No. 03 Civ. 1256 (JSM), 2003 WL 21459716 (S.D.N.Y. June 24, 2003) ............................. 9

*Global Reinsurance Corp.-U.S. Branch v. Equitas Ltd.*,
   18 N.Y.3d 722 (2012) ......................................................................................................... 10

*Hosking v. TPG Capital Mgmt., L.P. (In re Hellas Telecomms. (Luxembourg) II SCA)*,
   555 B.R. 323 (Bankr. S.D.N.Y. 2016) ...................................................................... 2, 3, 5, 6

*LaSala v. Bank of Cyprus Public Co. Ltd.*,
   510 F. Supp. 2d 246 (S.D.N.Y. 2007) ................................................................................... 3

*Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*,
   311 F.3d 488 (2d Cir. 2002) .................................................................................................. 4

*Palacios v. The Coca-Cola Co.*,
   757 F. Supp. 2d 347 (S.D.N.Y. 2010) ................................................................................... 4

*Skanga Energy & Marine Ltd. v. Arevenca S.A.*,
   875 F. Supp. 2d 264 (S.D.N.Y. 2012) ................................................................................... 3

*Spizz v. Goldfarb Seligman & Co. (In re Ampal-Am. Israel Corp.)*,
   562 B.R. 601 (Bankr. S.D.N.Y. 2017) .................................................................................. 9

*Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*,
    543 B.R. 127 (Bankr. S.D.N.Y. 2016) ................................................................................. 9

**Statutes and Rules**

Fed. R. Bankr. P. 2004 .................................................................................................................... 3

28 U.S.C. § 1782............................................................................................................................. 3

11 U.S.C. § 502(d) ........................................................................................................................ 10

11 U.S.C. § 548............................................................................................................................... 9

11 U.S.C. § 550............................................................................................................................. 10

**Other Authorities**

Fraudulent Dispositions Act, Revised Statutes of Anguilla 2006  (Chapter No. F60) ................................. 6

Defendant NBA respectfully submits this reply memorandum of law in support of its motion to dismiss or, alternatively, stay the debtor's March 20, 2017 AC.[1]

## PRELIMINARY STATEMENT

PBT offers no compelling counter to NBA's argument that this case belongs in Anguilla. All of the parties to this case are Anguillan. The subject matter of this dispute is already being litigated at the trial and appellate levels in Anguilla in cases filed by PBT and its depositors before this adversary proceeding was filed. And, critically, the challenged conduct occurred under the auspices of the Anguillan banking regulator's intervention into two of Anguilla's largest banks in order to address Anguilla's recent banking crisis. For these reasons, this case should be dismissed on *forum non conveniens* grounds, or, at the very least, stayed. The act of state doctrine also requires dismissal, as this Court cannot judge official acts undertaken by Anguilla's banking regulator in Anguilla, which is what PBT asks this Court to do.

Instead of squarely addressing NBA's *forum non conveniens*, comity and act of state arguments, PBT buries the lede and offers a lengthy dissertation on whether U.S. and New York fraudulent transfer laws apply extraterritorially. PBT is wrong on those points as well, but the Court need not reach them, as the merits of this wholly foreign dispute should be addressed by the Anguillan courts that are already adjudicating it.

## ARGUMENT

### I. THIS COURT IS NOT A CONVENIENT FORUM FOR LITIGATION AMONG WHOLLY ANGUILLAN PARTIES ABOUT ANGUILLAN CONDUCT

PBT's opposition to dismissal on *forum non conveniens* grounds is more notable for what PBT does not dispute than for what PBT actually argues. PBT does not dispute that, as a foreign

---

[1] Undefined capitalized terms have the meaning assigned to them in NBA's opening brief ("NBA Br."), Dkt. No. 42. PBT's opposition to NBA's motion to dismiss, Dkt. No. 49, is cited in this brief as "PBT Opp. (NBA)." PBT's opposition to ECCB's motion to dismiss, Dkt. No. 51, is cited in this brief as "PBT Opp. (ECCB)." Finally, the declaration submitted by PBT in support of its opposition papers, Dkt. No. 52, is cited in this brief as "Fontaine Decl."

plaintiff, its choice to sue in the United States is entitled to little, if any, deference. PBT does not dispute that the first-filed Anguillan Proceedings and PBT Depositor Proceedings cover the same subject matter as this adversary proceeding. PBT does not dispute that it filed this case after suffering setbacks in the Anguillan Proceedings. PBT does not dispute that the Conservator Directors' allegedly wrongful conduct occurred in the Caribbean. And PBT does not dispute that its claims, as the Anguillan court found, "raise[] serious issues" about the source, scope and exercise of Anguillan law-based regulatory powers. Hare Decl. Ex. C ¶ 107(5).

In short, PBT offers no compelling reason why this case should remain in this Court. Nor does PBT make much of an effort to distinguish this case from this Court's recent decision in *Hosking v. TPG Capital Mgmt., L.P. (In re Hellas Telecomms. (Luxembourg) II SCA)*, 555 B.R. 323, 354 (Bankr. S.D.N.Y. 2016). This case, which centers around how Anguilla's banking regulator addressed a banking crisis in Anguilla, presents circumstances even more compelling than those presented in *Hellas II*, and as a result the AC should be dismissed on *forum non conveniens* grounds in favor of litigation in Anguilla.

### A.    PBT's Decision To Sue In The United States Is Entitled To No Deference

PBT offers no direct response to NBA's arguments that, as a foreign plaintiff that has invoked this Court's jurisdiction only after suffering setbacks in the first-filed Anguillan Proceedings, its choice to sue here is entitled to no deference. NBA Br. at 7-8. Instead, PBT advances a number of superficial reasons for its choice of forum. First, PBT argues that its choice to sue here is entitled to deference because some of its allegedly "upstreamed" assets wound up in a New York bank account. PBT Opp. (ECCB) at 16-17. PBT's argument ignores the fact that the alleged wrongful conduct and injury occurred in Anguilla. AC ¶¶ 1-2, 7-8, 15-16, 22 (alleging that the Conservator Directors' purported mismanagement of PBT left PBT unable to satisfy its depositors' demands to withdraw funds from their Anguillan accounts).

2

PBT's argument also relies entirely on *Skanga Energy & Marine Ltd. v. Arevenca S.A.*, a case readily distinguishable from this one, as it involved payments made to a foreign defendant's New York bank account because the foreign defendant "wished to use [plaintiff's] payments in connection with [its] U.S.-based operations." 875 F. Supp. 2d 264, 267 (S.D.N.Y. 2012).

Second, PBT argues that it will need discovery in the United States in order to perform a tracing exercise. PBT Opp. (ECCB) at 17. But in this case alleging fraud and fiduciary breaches by a foreign banking regulator and its foreign representatives, the most relevant discovery will be the testimony and communications of those individuals. *Cf. LaSala v. Bank of Cyprus Public Co. Ltd.*, 510 F. Supp. 2d 246, 262 (S.D.N.Y. 2007) ("This is at its heart a dispute involving what Cyprus banking representatives did and what they knew when they did these things [*i.e.*, permitted unlawful transfers]."). In any event, discovery from U.S. persons or entities can be obtained through Rule 2004, which PBT has already invoked to obtain documents from Bank of America, *see* Order, Case No. 16-11806 (MG), Dkt. No. 22, or pursuant to 28 U.S.C. § 1782.

Third, PBT argues that it is entitled to have claims related to its bankruptcy heard by this Court. PBT Opp. (ECCB) at 17. In this regard, PBT attempts to distinguish this case from *Hellas II* by pointing to the existence of its New York law-based avoidance claims. *Id.* But New York law does not apply in this case. *See infra* Part IV.B. PBT's reliance on New York law-based claims to avoid the outcome of *Hellas II* strongly suggests that those claims are pled only to provide an illusory anchor to this Court.

Finally, PBT argues that it "is unable to obtain adequate redress in Anguilla" because Anguillan law allegedly does not recognize constructive fraudulent transfer claims. PBT Opp. (ECCB) at 18. That argument is frivolous. *See infra* Part I.B.

3

### B. Anguilla Is An Adequate Alternative Forum

PBT and its depositors are already pursuing claims in Anguilla against the defendants in this case. PBT turned to Anguilla's courts for relief before turning to this one. Against this backdrop, PBT cannot be serious when it argues that Anguilla's courts are inadequate. PBT Opp. (ECCB) at 18-20. PBT points to no case in which a U.S. court has found Anguilla to be an inadequate forum, and ignores the cases in which U.S. courts, including this one, have found Anguillan courts adequate. NBA Br. at 9 (citing cases).

PBT's principal argument against the adequacy of Anguilla's courts is that Anguillan law "does not recognize constructive fraud claims." PBT Opp. (ECCB) at 19. But PBT's own expert, on whom PBT relies to support this argument, says no such thing. Fontaine Decl. ¶ 14 (describing constructive fraud under Anguilla's common law as "not developed" and conceding that claims can be based on unconscionable receipt of a benefit without proof of fraudulent intent). In any event, "the availability of an adequate alternative forum does not depend on the existence of an identical cause of action in the other forum." *Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 610 (2d Cir. 1998) (quotations and citations omitted); *see also Palacios v. The Coca-Cola Co.*, 757 F. Supp. 2d 347, 357 (S.D.N.Y. 2010) (same). The law on this point could not be clearer: a forum is adequate so long as it permits litigation of the "subject matter of the dispute." *Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 499 (2d Cir. 2002) (citation omitted). PBT does not, because it cannot, dispute that the Anguillan Proceedings, the PBT Depositor Proceedings, and this adversary proceeding all involve the same subject matter.

4

**C.    The Private And Public Interests Tilt Decidedly In Favor Of Litigation In Anguilla**

As demonstrated in NBA's opening brief, Anguilla has an obvious and overriding public interest in protecting the integrity of its financial system and in adjudicating challenges to the way in which its banking regulator handled its recent banking crisis. NBA Br. at 10-11. PBT offers no response to this argument, and does not address the cases cited by NBA holding that a sovereign's interest in its local banking industry is paramount. *See id.* at 11 (citing cases). Instead, PBT points to a number of purported countervailing interests, none of which outweighs the interest in having this dispute resolved in Anguilla.

First, PBT repeats that it may need documents that are in the United States to trace its assets. PBT Opp. (ECCB) at 20-21. As shown in Part I.A above, PBT can get U.S. documents independently from this adversary proceeding. This factor is therefore unimportant.

Second, PBT describes defendants as "sophisticated global financial institutions" whose documents can be sent electronically, PBT Opp. (ECCB) at 21, but NBA is not a global financial institution; it is an Anguillan bank in receivership, AC ¶ 52. In any event, even if relevant records can be sent electronically, this factor is at best neutral. *Hellas II*, 555 B.R. at 353.

Third, PBT suggests that ECCB could cause witnesses to travel from Anguilla to the United States to testify, PBT Opp. (ECCB) at 21, but provides no basis for its assertion that these witnesses are currently within any defendants' control or subject to the subpoena power of this Court. NBA Br. at 13-14 (citing cases).

Fourth, PBT points to its putative authority to pursue proceedings outside Anguilla and the general availability of chapter 11 protection to foreign representatives. PBT Opp. (ECCB) at 22. It does not follow from these generic observations that this Court should entertain unnecessary litigation where, as here, the subject matter of the dispute is already being litigated

5

in the plaintiff's and defendants' home court. The fact that PBT has thus far been denied leave to sue NBA in Anguilla does not change this analysis. It defies common sense for PBT to contend that its administrator's order of appointment allows him to run off to a foreign country to sue an Anguillan bank in receivership when an Anguillan court has refused to let him do so.

Fifth, PBT again claims that Anguillan law does not recognize "the entirety of the claims in this action." PBT Opp. (ECCB) at 22. As shown above, that argument is both factually and legally flawed. *See supra* Part I.B.

Sixth, and finally, PBT attempts to downplay the centrality of Anguillan law in this case, but concedes that Anguillan law will apply. PBT Opp. (ECCB) at 23-24. In fact, Anguillan law is central to this case, *see* NBA Br. at 10-13, which at its core involves questions of Anguillan law concerning the scope of ECCB's and the Conservator Directors' authority and whether their duties were discharged in a manner consistent with that authority. *See, e.g.*, AC ¶¶ 7-8 (alleging that the Conservator Directors "impermissibly assert[ed] control over PBT" and had "no lawful authority for so doing"); ¶¶ 189-208 (claims under the Fraudulent Dispositions Act (Anguilla)). The clear need to apply Anguillan law in this case favors dismissal, and a New York jury should not be burdened with that exercise. *Hellas II*, 555 B.R. at 350 (citation omitted).

## II. IF THIS CASE IS NOT DISMISSED, IT SHOULD BE STAYED PENDING THE OUTCOME OF THE ANGUILLAN PROCEEDINGS

Although the Court would be well within its discretion to dismiss this case outright, if it has any doubt, NBA respectfully requests that the Court stay this case in favor of the Anguillan Proceedings and the PBT Depositors Proceedings. *See Hellas II*, 555 B.R. at 354. The comity concerns present in *Hellas II* are even more acute in this case.

PBT offers a number of misleading arguments to the contrary, none of which carries the day. First, PBT claims that its administrator is not trying to do anything to compete with PBT's

6

Anguillan estate. PBT Opp. (NBA) at 19. That is unsurprising, but it is also not the point. This case is an attempted end-run around the Anguillan Proceedings, where PBT's right to sue NBA in the first place is being litigated in a case PBT itself commenced.

Second, PBT argues that the transfers at issue are domestic. PBT Opp. (NBA) at 20. As explained below, they are not. *See infra* Parts IV.A & IV.B.

Third, PBT notes that, unlike in a chapter 15 case, a foreign representative in a chapter 11 case may pursue avoidance claims. PBT Opp. (NBA) at 20. That is true, and is likely the reason PBT has filed for relief under chapter 11. There is no indication that PBT's chapter 11 case exists for any purpose other than to serve as a vehicle for this case.

Finally, PBT argues that NBA's request for a stay is the same as a request for abstention or for an anti-suit injunction under *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33 (2d Cir. 1987). PBT Opp. (NBA) at 20-22. A stay is obviously different from an anti-suit injunction, and a stay is not abstention. If, after the conclusion of proceedings in Anguilla, there is something left of this case that needs to be addressed, PBT can argue for the stay to be lifted. The *China Trade* and abstention doctrines have no applicability here.

### III. THE ACT OF STATE DOCTRINE PRECLUDES THIS COURT FROM ADJUDICATING A CASE

PBT opposes dismissal pursuant to the act of state doctrine on two grounds. First, PBT claims that there was no act of state because "ECCB was never authorized to regulate the affairs of the Debtor." PBT Opp. (NBA) at 23. This circular reasoning around the act of state doctrine runs PBT right back into it. ECCB is the monetary authority and regulator in Anguilla and has the right to intervene into Anguilla's financial institutions, including NBA, in certain circumstances. AC ¶¶ 6, 25, 33. That is precisely what it did. Whether ECCB exceeded its authority vis-a-vis NBA and its subsidiary, PBT, is a question for, and currently before, the

7

Anguillan courts. PBT's argument that the act of state doctrine does not apply because there was no lawful act of state in the first place requires the Court to engage in precisely the sort of analysis that the doctrine is meant to prohibit. *See* NBA Br. at 17-18 (citing cases).

Second, PBT claims that the conduct at issue is "purely commercial," and contends that this case is about nothing more than transfers between banks. PBT Opp. (NBA) at 23. The AC itself demonstrates that this is not so. The AC is replete with allegations that Anguilla's central bank, through the Conservator Directors, violated Anguillan law when it allegedly caused PBT to transfer its funds to NBA, while NBA was in an ECCB-run conservatorship in Anguilla. AC ¶¶ 1, 5, 6-8, 16-18, 21, 62, 68, 74, 85, 87, 92, 94. The alleged conduct occurred in Anguilla at Anguillan banks under government control. *Id.* ¶ 1. An Anguillan court is considering these very questions in the PBT Depositors Proceedings, *see Satay* Decision ¶ 69, and it is the only court that is competent to do so. *See FOGADE v. ENB Revocable Trust*, 263 F.3d 1274, 1295-96 (11th Cir. 2001) (holding that act of state doctrine applied where, as here, the damage alleged flowed from a foreign government agency's intervention in an entity under its supervision).

## IV. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED

### A. The Transfers At Issue Are Extraterritorial And The Bankruptcy Code's Avoidance Provisions Do Not Apply Extraterritorially

PBT claims that the transfers at issue here were domestic because "legal title was transferred when personnel (at the direction of the Conservator Directors) deposited Funds into the Account – in the United States – titled in the name of NBA." PBT Opp. (NBA) at 7. PBT's bald statement in its opposition that title transferred in the United States adds little to the AC's conclusory allegations (and legal conclusions) of a domestic transfer. AC ¶¶ 12, 72.

In any event, even if legal title did transfer in the United States, countervailing factors continue to compel the conclusion that the "center of gravity" of the transfers is foreign. *See*

8

*Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 543 B.R. 127, 149 (Bankr. S.D.N.Y. 2016) (listing factors relevant to a transfer's center of gravity). Here, the participants in the transfers, PBT and NBA, are foreign. AC ¶¶ 22-23. Those acts were taken in the Caribbean by the Conservator Directors, who are also foreign. *Id.* ¶¶ 11, 13-17, 48. The alleged effect of the transfers is that customers who made deposits into PBT accounts cannot withdraw funds from their Anguillan accounts. *Id.* ¶ 15. For these reasons, the transfers between PBT and NBA are primarily foreign, and application of the U.S. Bankruptcy Code to them would be impermissibly extraterritorial as a result. *In re Lyondell*, 543 B.R. at 133-34, 149.

As the transfers alleged here are extraterritorial, Section 548 of the Bankruptcy Code does not allow for their recovery. *See Spizz v. Goldfarb Seligman & Co. (In re Ampal-Am. Israel Corp.)*, 562 B.R. 601, 606-14 (Bankr. S.D.N.Y. 2017). While PBT capably summarizes authority and scholarly writings to the contrary, PBT Opp. (NBA) at 8-14, for the reasons recently stated by Judge Bernstein, those authorities and writings are wrong. *In re Ampal-Am. Israel Corp.*, 562 B.R. at 606-14. Counts I and IV should be dismissed.

    **B.    New York Law Does Not Apply And Even If It Did New York's Debtor Creditor Law Does Not Apply Extraterritorially**

As PBT concedes, PBT Opp. (NBA) at 16, in determining whether New York's DCL applies to particular transfers, the key issue is where the allegedly wrongful conduct occurred.[2] *GFL Advantage Fund, Ltd. v. Colkitt*, No. 03 Civ. 1256 (JSM), 2003 WL 21459716, at *3 (S.D.N.Y. June 24, 2003) (citations omitted). That is clearly Anguilla. AC ¶¶ 6-8, 11, 13-17. The injury to PBT, which is the alleged impediment to satisfaction of its depositors' demands to

---

[2] PBT has identified a "conflict" between New York and Anguillan law, PBT Opp. (NBA) at 15, thus necessitating a choice of law analysis. While this "conflict" appears to have been concocted to buttress PBT's argument that Anguilla is an inadequate forum, *see supra* Part I.B, as PBT has taken the position that there is a conflict, it should now be precluded from contending otherwise.

9

withdraw funds from their Anguillan accounts, also occurred in Anguilla.[3]  AC ¶¶ 15, 22.  Thus, the DCL does not apply to the facts alleged by PBT.

Even if New York law did apply, the DCL would not reach the transfers between PBT and NBA, as those transfers occurred extraterritorially.  In New York there is a presumption against the extraterritorial operation of New York law, and in order for New York law to reach extraterritorial conduct there must be a "very close nexus" between the conduct and New York.  *Global Reinsurance Corp.-U.S. Branch v. Equitas Ltd.*, 18 N.Y.3d 722, 735-36 (2012).  There is no language in the DCL suggesting that it should be applied extraterritorially.[4]  Nor, for reasons already discussed, is there a "very close nexus" between the challenged transfers and New York.  *See supra* Part IV.A.  Counts VIII, X and XXI should be dismissed.

    **C.**    **The Section 550 And 502(d) Claims Also Fail**

For the reasons stated in paragraphs 7 and 13 of NCBA's reply in support of its motion to dismiss, which NBA joins and incorporates by reference, and for the reasons stated in NBA's opening brief, NBA Br. at 21-22, PBT's claims under Sections 550 and 502(d) of the Bankruptcy Code fail as a matter of law.  Counts XVI and XXV should be dismissed.

## **CONCLUSION**

For all of the foregoing reasons, NBA respectfully requests that this Court dismiss or, alternatively, stay the AC.

---

[3] PBT's attempt to rely on the location of its depositors as a proxy for the location of its injury conflates an injury to itself with an injury to its depositors. NBA Opp. at 17.  The two are distinct.  And as the PBT Depositor Proceedings demonstrate, PBT's depositors are perfectly capable of pursuing their own relief.

[4] Two of the cases cited by PBT involve New York residents and do not meaningfully address whether the DCL should be applied extraterritorially.  *See Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd.*, No. 94 Civ. 5620(JFK), 1999 WL 64283, at *1, 5-6 (S.D.N.Y. Feb. 8, 1999); *Elgin Sweeper Co. v. Melson Inc.*, 884 F. Supp. 641, 650 n.12 (N.D.N.Y. 1995).  In the other case cited by PBT, the court concluded without analysis that the DCL applied extraterritorially to transfers made by a New York incorporated company to its Korean parent.  *See Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr. Co.*, 375 F. Supp. 2d 257, 261, 268 n.4 (S.D.N.Y. 2005).  That decision has very recently been questioned.  *See Armada (Singapore) Pte Ltd. v. Amcol Int'l Corp.*, No. 13 C 3455, 2017 WL 1062322, at *5-6 (N.D. Ill. Mar. 21, 2017) (concluding that Illinois' fraudulent transfer statute, which is similar to New York's, does not apply extraterritorially).

10

Dated: June 9, 2017

        Respectfully submitted,

        /s/  Laura R. Hall
        Laura R. Hall
        Justin L. Ormand
        Rebecca R. Delfiner
        Allen & Overy LLP
        1221 Avenue of the Americas
        New York, NY 10020
        Telephone: (212) 610-6300
        Facsimile: (212) 610-6399
        laura.hall@allenovery.com
        justin.ormand@allenovery.com
        rebecca.delfiner@allenovery.com

*Attorneys for Defendant National Bank of Anguilla Ltd. (in receivership)*