REED SMITH LLP
James C. McCarroll
Jordan W. Siev
Kurt F. Gwynne (*pro hac vice*)
599 Lexington Avenue
New York, NY  10022-7650
Telephone:  (212) 521-5400
Facsimile:  (212) 521-5450
Email: jmccarroll@reedsmith.com
      jsiev@reedsmith.com
      kgwynne@reedsmith.com

*Counsel for the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>National Bank of Anguilla (Private Banking & Trust) Ltd.,<br><br>         Debtor. | Chapter 11<br><br>Case No.: 16-11806 (MG) |
| National Bank of Anguilla (Private Banking & Trust) Ltd.,<br>         Plaintiff,<br>v.<br>National Bank of Anguilla Ltd., National Commercial Bank of Anguilla Ltd., and Eastern Caribbean Central Bank,<br>         Defendants. | Case No.: 16-AP-01279 (MG)<br><br>**SUBMISSION PURSUANT**<br>**TO COURT'S JULY 27, 2017 ORDER** |

      The National Bank of Anguilla (Private Banking & Trust) Ltd. ("PBT"), by and through

its counsel, submits the following, pursuant to the Court's July 27, 2017 Order [ECF No. 66]

directing counsel for plaintiffs in both this case (the "PBT Adversary Proceeding"), as well as the

adversary proceeding captioned *Caribbean Commercial Investment Bank Ltd. v. Caribbean Commercial Bank (Anguilla) Ltd., et al.*, Case No. 17-ap-01058-smb (the "CCIB Adversary Proceeding" and, together with the PBT Adversary Proceeding, the "Adversary Proceedings") to identify for the Court the issues common to the motions to dismiss in both Adversary Proceedings, as well as the issues distinct to each of the Adversary Proceedings, and states as follows:

I. PROCEDURAL HISTORY OF THE ADVERSARY PROCEEDINGS

1. PBT commenced the instant adversary proceeding against defendants the National Bank of Anguilla Ltd. ("NBA"), the National Commercial Bank of Anguilla Ltd. ("NCBA"), and the Eastern Caribbean Central Bank ("ECCB," and, together with NBA and NCBA, the "PBT Defendants") on December 16, 2016 [ECF No. 1]. PBT filed its amended complaint on March 20, 2017 [ECF No. 32].

2. On April 28, 2017, the PBT Defendants moved to dismiss PBT's amended complaint [ECF Nos. 38, 41, 44] (the "PBT Motions to Dismiss"). PBT filed briefs in opposition to the PBT Motions to Dismiss on May 26, 2017 [ECF Nos. 49, 50, 51]. The PBT Defendants filed reply briefs in further support of the PBT Motions to Dismiss on June 9, 2017 [ECF Nos. 54, 55, 57].

3. The Caribbean Commercial Investment Bank Ltd. ("CCIB" and, together with PBT, the "Plaintiffs") commenced the CCIB Adversary Proceeding[1] by filing a complaint on May 1, 2017 against defendants Caribbean Commercial Bank (Anguilla) Ltd. ("CCB"), NCBA, and ECCB (together ECCB, CCB and NCBA are referred to as the "CCIB Defendants") [CCIB Dkt., ECF No. 1].

---

[1] References to the docket in the CCIB Adversary Proceeding shall be as follows: "CCIB Dkt., ECF No. [__]".

2

4.  On July 24, 2017, the CCIB Defendants moved to dismiss CCIB's complaint [CCIB Dkt., ECF Nos. 12, 15, 18] (the "CCIB Motions to Dismiss").  Pursuant to the briefing schedule in the CCIB Adversary Proceeding, CCIB will file briefs in opposition to the CCIB Motions to Dismiss on or before August 25, 2017, and the CCIB Defendants will file reply briefs, if any, in further support of the CCIB Motions to Dismiss on or before September 11, 2017.  Oral argument on the PBT Motions to Dismiss and the CCIB Motions to Dismiss will be held together on October 26, 2017.

**II.    COMMON ISSUES IN THE ADVERSARY PROCEEDINGS**

1.  The ECCB contends that it is immune from suit in the United States under the Foreign Sovereign Immunities Act ("FSIA") because the commercial activity exception to the FSIA upon which Plaintiffs rely does not apply so as to allow U.S. Courts to retain jurisdiction over the ECCB.  Specifically, the ECCB maintains that the commercial activity exception does not apply because the gravamen of Plaintiffs' claims in each of the Adversary Proceedings is based on actions the ECCB took in its sovereign capacity and, moreover, such activities did not have a direct effect in the United States.  Plaintiffs allege that the ECCB's activities with respect to both PBT and CCIB – over whom ECCB had no regulatory authority – were nothing more than ordinary banking activities, and are thus commercial activity under the FSIA, which occurred or had a direct effect in the United States given, among other things, the transfers to and from a U.S. bank account, and the presence of numerous injured depositors in the United States.

2.  The ECCB argues that the Plaintiffs have failed to establish personal jurisdiction over the ECCB because they cannot demonstrate that the ECCB has had minimal contacts with New York, and subjecting the ECCB to suit in New York does not comport with due process.  Plaintiffs contend that personal jurisdiction need not be established once jurisdiction under the

3

FSIA and proper service have been established, but that, in any event, the ECCB had numerous specific contacts with New York and with the United States generally.

3.      The defendants in each of the Adversary Proceedings assert that the complaints should be dismissed on grounds of *forum non conveniens* because, *inter alia*, the parties are Anguillan entities and Anguilla is the most convenient forum for Plaintiffs' claims.  In response, Plaintiffs assert that dismissal is not warranted given, among other things, that the location of many of the transfers at issue was New York; that the Anguillian court authorized the Plaintiffs to commence actions in foreign jurisdictions; that the Anguillan court recently issued a stay on one action in that court pending the outcome of the Adversary Proceedings; and Anguilla does not recognize constructively fraudulent transfers like the Bankruptcy Code does.

4.      Defendants CCB and NBA contend that the act of state doctrine prohibits U.S. courts from adjudicating cases in the U.S. based on allegations that a foreign banking regulator (*i.e*., the ECCB) violated its own laws in its own territory.  Plaintiffs contend that the challenged actions are commercial in nature and are not properly subject to the act of state defense.

5.      Defendants NCBA, NBA and CCB alternatively assert that, based on concerns of international comity, the Bankruptcy Court should stay the Adversary Proceedings pending the outcome of certain proceedings in Anguilla.  Plaintiffs contend that such a stay is not warranted because, among other things, the Anguillan court has stayed one of the actions before it pending the outcome of these Adversary Proceedings.

6.      Defendants NCBA, NBA and CCB[2] each argue that the transfers that Plaintiffs seek to avoid and recover under provisions of the Bankruptcy Code and the New York Debtor

---

[2] In the CCIB Adversary Proceeding, CCB is not the subject of a fraudulent conveyance claim under section 548 of the Bankruptcy Code, as the CCIB Complaint does not allege any fraudulent transfers within the two years prior to the petition date.

4

Creditor Law ("NYDCL") are foreign, rather than domestic transfers, as determined under the applicable law. Plaintiffs assert that in determining whether application of a statute is extraterritorial, rather than domestic, the Court must look to the "focus" of Congressional concern. As concerns the avoidance and recovery provisions of the Bankruptcy Code, the focus is on the initial transfers that deplete the bankruptcy estate, and not on the recipient of the transfers. The Plaintiffs assert that the critical factor is where the transfer occurred and where, as here, title transferred in the United States, the transfer is domestic.

7. Defendants NCBA, NBA, and CCB[3] further contend that the avoidance provisions of the Bankruptcy Code and the NYDCL do not apply extraterritorially. Although Plaintiffs assert that the transfers were domestic, should they be determined to be foreign, Plaintiffs assert that Congress has shown a clear intent that the Bankruptcy Code's avoidance powers apply extraterritorially. Similarly, for public policy reasons recognized by the courts, the NYDCL applies extraterritorially.

8. NCBA contends that Plaintiffs fail to state claims for relief under sections 548 and 544 of the Bankruptcy Code and the NYDCL because (i) Plaintiffs fails to allege sufficient detail with respect to the alleged pre-petition transfer from the parent defendant (*i.e.*, NBA and CCB, respectively) to NCBA on April 22, 2016, including its amount, and the specific funds and assets at issue; and (ii) Plaintiffs' allegations that they retained an equitable interest in the subject funds both before and after the transfers at issue precludes avoidance of those transfers under sections 544 or 548 of the Bankruptcy Code or under the NYDCL because Plaintiffs fail to establish that their interests in property were transferred. In response, Plaintiffs assert that they have plead the requisite details for the fraudulent transfer claims to survive defendants' motion to dismiss. As to NCBA's second argument that Plaintiffs' pre- and post-transfer interest remained

---

[3] *See* Footnote 2.

5

unchanged because both were equitable in nature, Plaintiffs assert that NCBA ignores that a "transfer" involves any disposition of an interest in property. Thus, when the funds at issue were deposited into the account at Bank of America, the respective Plaintiff lost its legal title to the funds and a "transfer" of an interest of the debtor in property occurred.

9. NBA, CCB and NCBA contend that Plaintiffs' claims under section 550 of the Bankruptcy Code fail as there is no viable avoidance claim as a basis for recovery under section 550. Because Plaintiffs have stated claims to avoid the respective transfers to NCBA, NBA and CCB, Plaintiffs assert that their section 550 claims are proper.

10. NCBA, NBA and CCB each assert that Plaintiffs' claims under section 502(d) of the Bankruptcy Code are premature as none of those defendants has asserted claims in either PBT or CCIB's Chapter 11 proceedings. NCBA also contends that all claims under section 502(d) of the Bankruptcy Code fail as neither of the Plaintiffs has established that transfers made to NCBA are avoidable or recoverable. Plaintiffs distinguish the cases cited by NCBA, NBA and CCB where, not only did the defendant not file a proof of claim against the plaintiff/debtor, but the bar date for doing so had passed. That is not the case in the Adversary Proceedings where there is no bar date. Moreover, to NCBA's second argument, the Plaintiffs have established that transfers made to NCBA are avoidable or recoverable.

### III.    DISTINCT ISSUES IN THE ADVERSARY PROCEEDINGS

11. In the PBT Adversary Proceeding, NCBA claims that the identified transfers are post-petition transfers that cannot be avoided under sections 548 or 544 of the Bankruptcy Code. PBT responds that PBT did not identify the transfers listed on Exhibit E of its amended complaint for the purpose of avoiding those transfers. Instead, PBT identified those post-petition transfers as evidence of NCBA's dominion and control over the funds that were in fact

transferred by NBA to NCBA on April 22, 2016, and to indicate the minimum amount of funds in the account on that date. This is not at issue in the CCIB Adversary Proceeding.

12. Claims under section 548 of the Bankruptcy Code are not asserted against defendant-parent CCB in the CCIB Adversary Proceeding. Such claims are asserted against defendant-parent NBA in the PBT Adversary Proceeding.

13. In the CCIB Adversary Proceeding, the ECCB asserts that CCB was "exposed to CCIB" based on an irrevocable guarantee to "fully assume the obligations of the subsidiary," which the ECCB submits as Exhibit H to the Declaration of Trevor Brathwaite. The existence of this guaranty is cited in support of the ECCB's argument that "any actions taken by the CCB Conservators were both consented to by CCIB and necessary to further the regulatory objectives of the Central Bank." CCB asserts that ECCB had terminated all of CCIB's directors, so any "consent" by CCIB is suspect. Neither PBT nor NBA is a party to this agreement and, thus, it is not at issue in the PBT Adversary Proceeding.

Dated: August 10, 2017  
       New York, New York

Respectfully submitted,

REED SMITH LLP

/s/ James C. McCarroll
James C. McCarroll
Jordan W. Siev
Kurt F. Gwynne (*pro hac vice*)
599 Lexington Avenue
New York, NY 10022-7650
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
Email: jmccarroll@reedsmith.com
       jsiev@reedsmith.com
       kgwynne@reedsmith.com

*Counsel for the Debtor and Debtor in Possession*